Filed 3/2/17

# IN THE SUPREME COURT OF CALIFORNIA

CITY OF SAN JOSE et al.,          )
                                      )
       Petitioners,          )
                                      )               S218066
        v.                   )
                                      )       Ct.App. 6 H039498
THE SUPERIOR COURT OF SANTA,  )      Santa Clara County
CLARA COUNTY,                )   Super. Ct. No. 109CV150427
       Respondent;         )
                                      )
TED SMITH,                    )
                                      )
       Real Party in Interest.    )
                                      )
_____)

Here, we hold that when a city employee uses a personal account to communicate about the conduct of public business, the writings may be subject to disclosure under the California Public Records Act (CPRA or Act).[1] We overturn the contrary judgment of the Court of Appeal.

## I. BACKGROUND

In June 2009, petitioner Ted Smith requested disclosure of 32 categories of public records from the City of San Jose, its redevelopment agency and the agency's executive director, along with certain other elected officials and their

---

[1] Government Code section 6250 et seq. All statutory references are to the Government Code unless otherwise specified.

staffs.[2]  The targeted documents concerned redevelopment efforts in downtown San Jose and included emails and text messages "sent or received on private electronic devices used by" the mayor, two city council members, and their staffs. The City disclosed communications made using City telephone numbers and email accounts but did not disclose communications made using the individuals' personal accounts.

Smith sued for declaratory relief, arguing CPRA's definition of "public records" encompasses all communications about official business, regardless of how they are created, communicated, or stored.  The City responded that messages communicated through personal accounts are not public records because they are not within the public entity's custody or control.  The trial court granted summary judgment for Smith and ordered disclosure, but the Court of Appeal issued a writ of mandate.  At present, no documents from employees' personal accounts have been collected or disclosed.

## II.  DISCUSSION

This case concerns how laws, originally designed to cover paper documents, apply to evolving methods of electronic communication.  It requires recognition that, in today's environment, not all employment-related activity occurs during a conventional workday, or in an employer-maintained workplace.

Enacted in 1968, CPRA declares that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."  (§ 6250.)  In 2004, voters made this principle part of our Constitution.  A provision added by Proposition 59 states:  "The people have the right of access to information concerning the conduct of the people's business, and, therefore, . . . the writings of public officials and agencies shall be open to public scrutiny."  (Cal. Const., art. I, § 3, subd. (b)(1).)  Public access laws serve a

---

[2]    These parties, sued as defendants below and the petitioners here, are collectively referred to as the "City."

2

crucial function. "Openness in government is essential to the functioning of a democracy. 'Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.' " (*International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328-329 (*International Federation*).)

However, public access to information must sometimes yield to personal privacy interests. When enacting CPRA, the Legislature was mindful of the right to privacy (§ 6250), and set out multiple exemptions designed to protect that right. (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 288 (*Commission on Peace Officer Standards*); see § 6254.) Similarly, while the Constitution provides for public access, it does not supersede or modify existing privacy rights. (Cal. Const., art. I, § 3, subd. (b)(3).)

CPRA and the Constitution strike a careful balance between public access and personal privacy. This case concerns how that balance is served when documents concerning official business are created or stored outside the workplace. The issue is a narrow one: Are writings concerning the conduct of public business beyond CPRA's reach merely because they were sent or received using a nongovernmental account? Considering the statute's language and the important policy interests it serves, the answer is no. Employees' communications about official agency business may be subject to CPRA regardless of the type of account used in their preparation or transmission.

3

A.      *Statutory Language, Broadly Construed, Supports Public Access*

CPRA establishes a basic rule requiring disclosure of public records upon request.  (§ 6253.)**3**  In general, it creates "a presumptive right of access to any record *created or maintained* by a public agency that relates in any way to the business of the public agency."  (*Sander v. State Bar of California* (2013) 58 Cal.4th 300, 323, italics added.)  Every such record "must be disclosed unless a statutory exception is shown."  (*Ibid*.)  Section 6254 sets out a variety of exemptions, "many of which are designed to protect individual privacy." (*International Federation*, *supra*, 42 Cal.4th at p. 329.)  The Act also includes a catchall provision exempting disclosure if "the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure." (§ 6255, subd. (a).)

"When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'  [Citation.]  'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' "  (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165-166.)

---

**3**      CPRA was modeled on the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552).  (*San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 772.)

In CPRA cases, this standard approach to statutory interpretation is augmented by a constitutional imperative.  (See *Sierra Club v. Superior Court*, *supra*, 57 Cal.4th at p. 166.)  Proposition 59 amended the Constitution to provide: "A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be *broadly* construed if it furthers the people's right of access, and *narrowly* construed if it limits the right of access."  (Cal. Const., art. I, § 3, subd. (b)(2), italics added.)  " 'Given the strong public policy of the people's right to information concerning the people's business (Gov. Code, § 6250), and the constitutional mandate to construe statutes limiting the right of access narrowly (Cal. Const., art. I, § 3, subd. (b)(2)), "all public records are subject to disclosure unless the Legislature has *expressly* provided to the contrary." ' " (*Sierra Club*, at p. 166.)

We begin with the term "public record," which CPRA defines to include "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics."  (§ 6252, subd. (e); hereafter "public records" definition.)  Under this definition, a public record has four aspects.  It is (1) a writing, (2) with content relating to the conduct of the public's business, which is (3) prepared by, *or* (4) owned, used, or retained by any state or local agency.

1.      *Writing*

CPRA defines a "writing" as "any handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored."  (§ 6252, subd. (g).)  It is undisputed that the items at issue here constitute writings.

In 1968, creating a "writing" could be a fairly involved process.  Typically, a person would use an implement to type, or record words longhand, or would

dictate to someone else who would write or type a document.  Writings were generally made on paper or some other tangible medium.  These writings were physically identifiable and could be retrieved by examining the physical repositories where they were stored.  Writings exchanged with people outside the agency were generally sent, on paper, through the mail or by courier.  In part because of the time required for their preparation, such writings were fairly formal and focused on the business at hand.

Today, these tangible, if laborious, writing methods have been enhanced by electronic communication.  Email, text messaging, and other electronic platforms, permit writings to be prepared, exchanged, and stored more quickly and easily.  However, the ease and immediacy of electronic communication has encouraged a commonplace tendency to share fleeting thoughts and random bits of information, with varying degrees of import, often to broad audiences.  As a result, the line between an official communication and an electronic aside is now sometimes blurred.  The second aspect of CPRA's "public records" definition establishes a framework to distinguish between work-related and purely private communications.

2.      *Relating to the Conduct of the Public's Business*

The overall structure of CPRA, with its many exemptions, makes clear that not everything written by a public employee is subject to review and disclosure.  To qualify as a public record, a writing must "contain[] information relating to the conduct of the public's business."  (§ 6252, subd. (e).)  Generally, any "record . . . kept by an officer because it is necessary or convenient to the discharge of his official duty . . . is a public record."  (*Braun v. City of Taft* (1984) 154 Cal.App.3d 332, 340; see *People v. Purcell* (1937) 22 Cal.App.2d 126, 130.)

Whether a writing is sufficiently related to public business will not always be clear.  For example, depending on the context, an email to a spouse complaining "my coworker is an idiot" would likely not be a public record.  Conversely, an email to a superior reporting the coworker's mismanagement of an

6

agency project might well be.  Resolution of the question, particularly when writings are kept in personal accounts, will often involve an examination of several factors, including the content itself; the context in, or purpose for which, it was written; the audience to whom it was directed; and whether the writing was prepared by an employee acting or purporting to act within the scope of his or her employment.  Here, the City claimed all communications in personal accounts are beyond the reach of CPRA.  As a result, the content of specific records is not before us.  Any disputes over this aspect of the "public records" definition await resolution in future proceedings.

We clarify, however, that to qualify as a public record under CPRA, at a minimum, a writing must relate in some substantive way to the conduct of the public's business.  This standard, though broad, is not so elastic as to include every piece of information the public may find interesting.  Communications that are primarily personal, containing no more than incidental mentions of agency business, generally will not constitute public records.  For example, the public might be titillated to learn that not all agency workers enjoy the company of their colleagues, or hold them in high regard.  However, an employee's electronic musings about a colleague's personal shortcomings will often fall far short of being a "writing containing information relating to the conduct of the public's business."  (§ 6252, subd. (e).)[4]

*Coronado Police Officers Assn. v. Carroll* (2003) 106 Cal.App.4th 1001 demonstrates the intricacy of determining whether a writing is related to public

---

[4]     We recognize that this test departs from the notion that "[o]nly purely personal" communications "totally void of reference to governmental activities" are excluded from CPRA's definition of public records.  (Assem. Statewide Information Policy Com., Final Rep. (Mar. 1970) 1 Assem. J. (1970 Reg. Sess.) appen. p. 9; see *San Gabriel Tribune v. Superior Court*, *supra*, 143 Cal.App.3d at p. 774.)  While this conception may yield correct results in some circumstances, it may sweep too broadly in others, particularly when applied to electronic communications sent through personal accounts.

business.  There, police officers sought access to a database of impeachment material compiled by public defenders.  The attorneys contributed to the database and used its contents in their work.  (*Id*. at p. 1005.)  However, their representation of individual clients, though paid for by a public entity, was considered under case law to be essentially a private function.  (*Id.* at pp. 1007-1009; see *Polk County v. Dodson* (1981) 454 U.S. 312, 321-322.)  Accordingly, the *Coronado* court concluded the database did not relate to public business and thus was not a public record.  (*Id.* at pp. 1007-1009.)  The court was careful to note that not all documents related to the database were private, however.  Documents reflecting policy decisions about whether and how to maintain the database might well relate to public business, rather than the representation of individual clients.  (*Id*. at p. 1009.)  Content of that kind would constitute public records.  (*Ibid*.)

3.    *Prepared by Any State or Local Agency*

The City focuses its challenge on the final portion of the "public records" definition, which requires that writings be "prepared, owned, used, or retained by any state or local agency."  (§ 6252, section (e).)  The City argues this language does not encompass communications agency employees make through their personal accounts.  However, the broad construction mandated by the Constitution supports disclosure.

A writing is commonly understood to have been prepared by the person who wrote it.  If an agency employee prepares a writing that substantively relates to the conduct of public business, that writing would appear to satisfy the Act's definition of a public record.  The City urges a contrary conclusion when the writing is transmitted through a personal account.  In focusing its attention on the "owned, used, or retained by" aspect of the "public records" definition, however, it ignores the "prepared by" aspect.  (§ 6252, subd. (e).)  This approach fails to give " 'significance to every word, phrase, sentence, and part' " of the Act.  (*Sierra Club v. Superior Court*, *supra*, 57 Cal.4th at p. 166.)

8

The City draws its conclusion by comparing the Act's definitions of "local" and "state" agency.  Under CPRA, " '*Local agency*' includes a county; city, whether general law or chartered; city and county; school district; municipal corporation; district; political subdivision; or any board, commission or agency thereof; other local public agency; or entities that are legislative bodies of a local agency pursuant to subdivisions (c) and (d) of Section 54952."  (§ 6252, subd. (a), italics added.)  The City points out that this definition does not specifically include individual government officials or staff members, whereas individuals *are* specifically mentioned in CPRA's definition of "*state agency*."  According to that definition, " 'State agency' means every state office, *officer*, department, division, bureau, board, and commission or other state body or agency, except those agencies provided for in Article IV (except Section 20 thereof) or Article VI of the California Constitution."[5]  (§ 6252, subd. (f)(1), italics added.)  The City contends this difference shows the Legislature intended to exclude individuals from the local agency definition.  If a local agency does not encompass individual officers and employees, it argues, only writings accessible to the agency as a whole are public records.  This interpretation is flawed for a number of reasons.

The City's narrow reading of CPRA's local agency definition is inconsistent with the constitutional directive of broad interpretation.  (Cal. Const., art. I, § 3, subd. (b)(2); see *Sierra Club v. Superior Court*, *supra*, 57 Cal.4th at p. 175.)  Broadly construed, the term "local agency" logically includes not just the discrete governmental entities listed in section 6252, subdivision (a) but also the individual officials and staff members who conduct the agencies' affairs.  It is well established that a governmental entity, like a corporation, can act only through its

---

**5**      Article IV establishes the Legislature, and article VI establishes the state's judiciary.  (Cal. Const., arts. IV, VI.)  These branches of government are thus generally exempt from CPRA.  (See *Sander v. State Bar of California*, *supra*, 58 Cal.4th at p. 318; *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111.)

9

individual officers and employees. (*Suezaki v. Superior Court* (1962) 58 Cal.2d 166, 174; *Alvarez v. Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 998; see *United States v. Dotterweich* (1943) 320 U.S. 277, 281; *Reno v. Baird* (1998) 18 Cal.4th 640, 656.) A disembodied governmental agency cannot prepare, own, use, or retain any record. Only the human beings who serve in agencies can do these things. When employees are conducting agency business, they are working for the agency and on its behalf. (See, e.g., *Cal. Assn. of Health Facilities v. Dept. of Health Services* (1997) 16 Cal.4th 284, 296-297; cf. *Competitive Enterprise Institute v. Office of Science & Technology Policy* (D.C. Cir. 2016) 827 F.3d 145, 149 [reaching the same conclusion for federal FOIA requests].). We presume the Legislature was aware of these settled principles. (See *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199.) A writing prepared by a public employee conducting agency business has been "prepared by" the agency within the meaning of section 6252, subdivision (e), even if the writing is prepared using the employee's personal account.

The City also fails to explain how its proposed requirement that a public record be "accessible to the agency as a whole" could be practically interpreted. Even when documents were stored in filing cabinets or ledgers, many writings would not have been considered accessible to all agency employees, regardless of their level of responsibility or involvement in a particular project.

Moreover, although employees are not specifically mentioned in the local agency definition, nothing in the statutory language indicates the Legislature meant to *exclude* these individuals from CPRA obligations. The City argues the omission of the word "officer" from the local agency definition reflects a legislative intent that CPRA apply to individuals who work in *state* agencies but *not* employees in local government. The City offers no reason why the Legislature would draw such an arbitrary distinction. If it intended to impose different disclosure obligations on state and local agencies, one would expect to find this difference highlighted throughout the statutory scheme, particularly when the

10

obligations relate to a "fundamental and necessary right of every person in this state." (§ 6250.) Yet there is no mention of such an intent anywhere in the Act. Indeed, under the City's logic, CPRA obligations would potentially extend only to state *officers*, not necessarily state *employees*. The distinction between tenured public officers and those who hold public employment has long been recognized. (See *In re M.M.* (2012) 54 Cal.4th 530, 542-544.) Considering CPRA's goal of promoting public access, it would have been odd for the Legislature to establish different rules for different levels of state employment. Contrary to the City's view, it seems more plausible that the reference to "every state . . . officer" in the state agency definition (§ 6252, subd. (f)) was meant to extend CPRA obligations to elected state officers, such as the Governor, Treasurer, or Secretary of State, who are not part of a collective governmental body nor generally considered *employees* of a state agency.[6]

The City's position is further undermined by another CPRA provision, which indicates that public records can be held by individual officials and need not belong to an agency as a whole. When it is alleged that public records have been improperly withheld, section 6259, subdivision (a) directs that "the court shall order the officer or person charged with withholding the records" to disclose the records or show cause why they should not be produced. If the court concludes "the public official's decision to refuse disclosure is not justified," it can order "the public official to make the record public." (§ 6259, subd. (b).) If the court

---

[6]     In one respect the local agency definition is worded more broadly than the state agency definition. Section 6252, subdivision (a) states that the term local agency "includes" a county, city, or one of several other listed entities. In statutory drafting, the term "includes" is ordinarily one "of enlargement rather than limitation." (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101.) "The 'statutory definition of a thing as "including" certain things does not necessarily place thereon a meaning limited to the inclusions.' " (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 774.) By contrast, the definition of "state agency" is couched in more restrictive language:  " 'State agency' *means* every state office, officer . . .," and other listed entities. (§ 6252, subd. (f), italics added.)

11

finds "that the public official was justified in refusing" disclosure, it must "return the item to the public official without disclosing its content." (*Ibid*.) The Legislature's repeated use of the singular word "official" in section 6259 indicates an awareness that an individual may possess materials that qualify as public records. Moreover, the broad term "public official" encompasses officials in state *and* local agencies, signifying that CPRA disclosure obligations apply to individuals working in both levels of government.

4. *Owned, Used, or Retained by Any State or Local Agency*

CPRA encompasses writings prepared *by* an agency but also writings it owns, uses, or retains, regardless of authorship. Obviously, an agency engaged in the conduct of public business will use and retain a variety of writings related to that business, including those prepared by people outside the agency. These final two factors of the "public records" definition, use and retention, thus reflect the variety of ways an agency can possess writings used to conduct public business.

As to retention, the City argues "public records" include only materials in an agency's possession or directly accessible to the agency. Citing statutory arguments and cases limiting the duty to obtain and disclose documents possessed by others, the City contends writings held in an employee's personal account are beyond an agency's reach and fall outside CPRA. The argument fails.

Appellate courts have generally concluded records related to public business are subject to disclosure if they are in an agency's actual *or constructive* possession. (See, e.g., *Board of Pilot Comrs. for the Bays of San Francisco, San Pablo and Suisun v. Superior Court* (2013) 218 Cal.App.4th 577, 598; *Consolidated Irrigation Dist. v. Superior Court* (2012) 205 Cal.App.4th 697, 710 (*Consolidated Irrigation*).) "[A]n agency has constructive possession of records if it has the right to control the records, either directly or through another person." (*Consolidated Irrigation*, at p. 710.) For example, in *Consolidated Irrigation*, a city did not have constructive possession of documents in files maintained by subconsultants who prepared portions of an environmental impact report because

12

the city had no contractual right to control the subconsultants or their files. (*Id.* at pp. 703, 710-711.) By contrast, a city had a CPRA duty to disclose a consultant's field survey records because the city had a contractual ownership interest and right to possess this material. (See *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1426, 1428-1429 (*Community Youth*).)

An agency's actual or constructive possession of records is relevant in determining whether it has an obligation to search for, collect, and disclose the material requested. (See § 6253, subd. (c).) It is a separate and more fundamental question whether a document located outside an agency's walls, or servers, is sufficiently "owned, used, or retained" by the agency so as to constitute a public record. (See § 6252, subd. (e).) In construing FOIA, federal courts have remarked that an agency's public records "do not lose their agency character just because the official who possesses them takes them out the door." (*Competitive Enterprise Institute v. Office of Science and Technology Policy*, *supra*, 827 F.3d at p. 149.) We likewise hold that documents otherwise meeting CPRA's definition of "public records" do not lose this status because they are located in an employee's personal account. A writing retained by a public employee conducting agency business has been "retained by" the agency within the meaning of section 6252, subdivision (e), even if the writing is retained in the employee's personal account.

The City argues various CPRA provisions run counter to this conclusion. First, the City cites section 6270, which provides that a state or local agency may not transfer a public record to a private entity in a manner that prevents the agency "*from providing the record directly* pursuant to this chapter." (Italics added.) Taking the italicized language out of context, the City argues that public records are only those an agency is able to access "directly." But this strained interpretation sets legislative intent on its head. The statute's clear purpose is to prevent an agency from evading its disclosure duty by transferring custody of a record to a private holder and then arguing the record falls outside CPRA because it is no longer in the agency's possession. Furthermore, section 6270 does not

13

purport to excuse agencies from obtaining public records in the possession of *their own employees*. It simply prohibits agencies from attempting to evade CPRA by transferring public records to an intermediary not bound by the Act's disclosure requirements.

Next, the City relies on section 6253.9, subdivision (a)(1), which states that an agency must make a public record available "in any electronic format in which *it holds* the information" (italics added), and on section 6253, subdivision (a), which requires that public records be available for inspection "during . . . office hours." These provisions do not assist the City. They merely address the mechanics of how public records must be disclosed. They do not purport to define or limit what constitutes a public record in the first place. Moreover, to say that only public records "in the possession of the agency" (§ 6253, subd. (c)) must be disclosed begs the question of whether the term "agency" includes individual officers and employees. We have concluded it does.

Under the City's interpretation of CPRA, a document concerning official business is only a public record if it is located on a government agency's computer servers or in its offices. Indirect access, through the agency's employees, is not sufficient in the City's view. However, we have previously stressed that a document's status as public or confidential does not turn on the arbitrary circumstance of where the document is located.

In *Commission on Peace Officer Standards*, *supra*, 42 Cal.4th at pages 289 to 290, a state agency argued certain employment information was exempt from disclosure under CPRA because it had been placed in confidential personnel files. In considering a Penal Code provision that deems peace officer personnel records confidential, we rejected an interpretation that made confidentiality turn on the type of file in which records are located, finding it "unlikely the Legislature intended to render documents confidential based on their location, rather than their content." (*Commission*, at p. 291.) Although we made this observation in analyzing the scope of a CPRA exemption, the same logic applies to the Act's

14

definition of what constitutes a public record in the first place. We found it unlikely "the Legislature intended that a public agency be able to shield information from public disclosure simply by placing it in" a certain type of file. (*Commission*, at p. 291.) Likewise, there is no indication the Legislature meant to allow public officials to shield communications about official business simply by directing them through personal accounts. Such an expedient would gut the public's presumptive right of access (*Sander v. State Bar of California*, *supra*, 58 Cal.4th at p. 323), and the constitutional imperative to broadly construe this right (Cal. Const., art. I, § 3, subd. (b)(2)).

In light of these principles, and considering section 6252, subdivision (e) in the context of the Act as a whole (see *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83), we conclude a city employee's communications related to the conduct of public business do not cease to be public records just because they were sent or received using a personal account. Sound public policy supports this result.

B.    *Policy Considerations*

Both sides cite policy considerations to support their interpretation of the "public records" definition. The City argues the definition reflects a legislative balance between the public's right of access and individual employees' privacy rights, and should be interpreted categorically. Smith counters that privacy concerns are properly addressed in the case-specific application of CPRA's exemptions, not in defining the overall scope of a public record. Smith also contends any privacy intrusion resulting from a search for records in personal accounts can be minimized through procedural safeguards. Smith has the better of these arguments.

The City's interpretation would allow evasion of CPRA simply by the use of a personal account. We are aware of no California law requiring that public officials or employees use only government accounts to conduct public business. If communications sent through personal accounts were categorically excluded from CPRA, government officials could hide their most sensitive, and potentially

15

damning, discussions in such accounts. The City's interpretation "would not only put an increasing amount of information beyond the public's grasp but also encourage government officials to conduct the public's business in private." (Senat, *Whose Business Is It: Is Public Business Conducted on Officials' Personal Electronic Devices Subject to State Open Records Laws?* (2014) 19 Comm. L. & Pol'y 293, 322.)

It is no answer to say, as did the Court of Appeal, that we must presume public officials conduct official business in the public's best interest. The Constitution neither creates nor requires such an optimistic presumption. Indeed, the rationale behind the Act is that it is for the *public* to make that determination, based on information to which it is entitled under the law. Open access to government records is essential to *verify* that government officials are acting responsibly and held accountable to the public they serve. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651.) "Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." (*Ibid*.) The whole purpose of CPRA is to ensure transparency in government activities. If public officials could evade the law simply by clicking into a different email account, or communicating through a personal device, sensitive information could routinely evade public scrutiny.

The City counters that the privacy interests of government employees weigh against interpreting "public records" to include material in personal accounts. Of course, public employees do not forfeit all rights to privacy by working for the government. (*Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 951.) Even so, the City essentially argues that the contents of personal email and other messaging accounts should be categorically excluded from public review because these materials have traditionally been considered private. However, compliance with CPRA is not necessarily inconsistent with the privacy rights of public employees. Any personal information not related to the conduct of public business, or material falling under

16

a statutory exemption, can be redacted from public records that are produced or presented for review. (See § 6253, subd. (a).)

Furthermore, a crabbed and categorical interpretation of the "public records" definition is unnecessary to protect employee privacy. Privacy concerns can and should be addressed on a case-by-case basis. (See *International Federation*, *supra*, 42 Cal.4th at p. 329.) Beyond the definition of a public record, the Act itself limits or exempts disclosure of various kinds of information, including certain types of preliminary drafts, notes, or memoranda (§ 6254, subd. (a)), personal financial data (§ 6254, subd. (n)), personnel and medical files (§ 6254, subd. (c)), and material protected by evidentiary privileges (§ 6254, subd. (k)). Finally, a catchall exemption allows agencies to withhold any record if the public interest served by withholding it "clearly outweighs" the public interest in disclosure. (§ 6255, subd. (a).) This exemption permits a balance between the public's interest in disclosure and the individual's privacy interest. (*International Federation*, at pp. 329-330; *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 755-756.) The analysis here, as with other exemptions, appropriately focuses on the *content* of specific records rather than their location or medium of communication. (See *Commission on Peace Officer Standards*, *supra*, 42 Cal.4th at p. 291.)[7]

---

[7] While admitting it invoked no CPRA exemptions in the proceedings below, the City nevertheless asks us to decide that messages in employees' personal accounts are universally exempt from disclosure under section 6255. This issue has not been preserved and is beyond the scope of our grant of review. It also appears impossible to decide on this record. Answering threshold questions about whether employees have a reasonable expectation of privacy (see *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35), or whether their messages are covered by the "deliberative process" privilege (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1339-1344) would require a fact-intensive review of the City's policies and practices regarding electronic communications, if not the contents of the challenged documents themselves. The record here is insufficient.

17

The City also contends the search for public records in employees' accounts would itself raise privacy concerns. In order to search for responsive documents, the City claims agencies would have to demand the surrender of employees' electronic devices and passwords to their personal accounts. Such a search would be tantamount to invading employees' homes and rifling through their filing cabinets, the City argues. It urges no case has extended CPRA so far.

Arguments that privacy interests outweigh the need for disclosure in CPRA cases have typically focused on the sensitive content of the documents involved, rather than the intrusiveness involved in searching for them. (See, e.g., *International Federation*, *supra*, 42 Cal.4th 319; *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272.) Assuming the search for responsive documents can also constitute an unwarranted invasion of privacy, however, this concern alone does not tip the policy balance in the City's favor. Searches can be conducted in a manner that respects individual privacy.

C.     *Guidance for Conducting Searches*

The City has not attempted to search for documents located in personal accounts, so the legality of a specific kind of search is not before us. However, the City and some amici curiae do highlight concerns about employee privacy. Some guidance about how to strike the balance between privacy and disclosure may be of assistance.

CPRA requests invariably impose some burden on public agencies. Unless a records request is overbroad or unduly burdensome, agencies are obliged to disclose all records they can locate "with reasonable effort." (*California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 166.) Reasonable efforts do not require that agencies undertake extraordinarily extensive or intrusive searches, however. (See *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 453; *Bertoli v. City of Sebastopol* (2015) 233 Cal.App.4th 353, 371-372.) In general, the scope of an agency's search for public records "need only be reasonably calculated to locate responsive documents."

18

(*American Civil Liberties Union of Northern Cal. v. Superior Court* (2011) 202 Cal.App.4th 55, 85; see *Community Youth*, *supra*, 220 Cal.App.4th at p. 1420.)

CPRA does not prescribe specific methods of searching for those documents. Agencies may develop their own internal policies for conducting searches. Some general principles have emerged, however. Once an agency receives a CPRA request, it must "communicate the scope of the information requested to the custodians of its records," although it need not use the precise language of the request. (*Community Youth*, *supra*, 220 Cal.App.4th at p. 1417.) As to requests seeking public records held in employees' nongovernmental accounts, an agency's first step should be to communicate the request to the employees in question. The agency may then reasonably rely on these employees to search *their own* personal files, accounts, and devices for responsive material.

Federal courts applying FOIA have approved of individual employees conducting their own searches and segregating public records from personal records, so long as the employees have been properly trained in how to distinguish between the two. (See *Ethyl Corp. v. U.S. Environmental Protection Agency* (4th Cir. 1994) 25 F.3d 1241, 1247.) A federal employee who withholds a document identified as potentially responsive may submit an affidavit providing the agency, and a reviewing court, "with a sufficient factual basis upon which to determine whether contested items were 'agency records' or personal materials." (*Grand Cent. Partnership, Inc. v. Cuomo* (2d Cir. 1999) 166 F.3d 473, 481.) The Washington Supreme Court recently adopted this procedure under its state public records law, holding that employees who withhold personal records from their employer "must submit an affidavit with facts sufficient to show the information is not a 'public record' under the PRA. So long as the affidavits give the requester and the trial court a sufficient factual basis to determine that withheld material is indeed nonresponsive, the agency has performed an adequate search under the PRA." (*Nissen v. Pierce County* (Wn. 2015) 183 Wn.2d 863 [357 P.3d 45, 57].) We agree with Washington's high court that this procedure, when followed in

19

good faith, strikes an appropriate balance, allowing a public agency "to fulfill its responsibility to search for and disclose public records without unnecessarily treading on the constitutional rights of its employees." (*Id.*, 357 P.3d at p. 58.)

Further, agencies can adopt policies that will reduce the likelihood of public records being held in employees' private accounts. "Agencies are in the best position to implement policies that fulfill their obligations" under public records laws "yet also preserve the privacy rights of their employees." (*Nissen v. Pierce County*, *supra*, 357 P.3d at p. 58.) For example, agencies might require that employees use or copy their government accounts for all communications touching on public business. Federal agency employees must follow such procedures to ensure compliance with analogous FOIA requests. (See 44 U.S.C. § 2911(a) [prohibiting use of personal electronic accounts for official business unless messages are copied or forwarded to an official account]; 36 C.F.R. § 1236.22(b) (2016) [requiring that agencies ensure official email messages in employees' personal accounts are preserved in the agency's recordkeeping system]; *Landmark Legal Foundation v. Environmental Protection Agency* (D.D.C. 2015) 82 F.Supp.3d 211, 225-226 [encouraging a policy that official emails be preserved in employees' personal accounts as well].)

We do not hold that any particular search method is required or necessarily adequate. We mention these alternatives to offer guidance on remand and to explain why privacy concerns do not require categorical exclusion of documents in personal accounts from CPRA's "public records" definition. If the City maintains the burden of obtaining records from personal accounts is too onerous, it will have an opportunity to so establish in future proceedings. (See *Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 615-616; *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177, 1188.)

D.     *Conclusion*

Consistent with the Legislature's purpose in enacting CPRA, and our constitutional mandate to interpret the Act broadly in favor of public access (Cal.

20

Const., art. I, § 3, subd. (b)(2)), we hold that a city employee's writings about public business are not excluded from CPRA simply because they have been sent, received, or stored in a personal account.

DISPOSITION

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

CORRIGAN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CHIN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

21

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** City of San Jose v. Superior Court
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 225 Cal.App.4th 75
**Rehearing Granted**

_____

**Opinion No.** S218066
**Date Filed:** March 2, 2017
_____

**Court:** Superior
**County:** Santa Clara
**Judge:** James P. Kleinberg

_____

**Counsel:**

Richard Doyle, City Attorney, Nora Frimann, Assistant City Attorney, and Margo Laskowska, Deputy City Attorney, for Petitioners.

Keith J. Bray, Joshua Rosen Daniels; Dannis Woliver Kelley, Sue Ann Salmon Evans and William B. Tunick for Education Legal Alliance of the California School Boards Association as Amicus Curiae on behalf of Petitioners.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Petitioners.

Best, Best & Krieger, Shawn D. Hagerty and Hong Dao Nguyen for League of California Cities, California Association of Sanitation Agencies and California Special Districts Association Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

McManis Faulkner, James McManis, Matthew Schechter, Christine Peek, Tyler Atkinson and Jennifer Murakami for Real Party in Interest.

Mastagni Holstedt, David E. Mastagni, Isaac S. Stevens and Jeffrey R.A. Edwards for Sacramento Police Officers' Association, Stockton Police Officers' Association, Sacramento County Deputy Sheriffs' Association, Sacramento County Law Enforcement Managers Association, San Bernardino County Public Attorneys Association, Deputy Sheriffs' Association of Alameda County, Statewide University Police Association, Sacramento Area Firefighters, International Association of Firefighters, Local 552, AFL-CIO, Palo Alto Firefighters, International Association of Firefighters, Local 1319, AFL-CIO, San Mateo County Deputy Sheriffs' Association, Rialto Professional Firefighters, International Association of Firefighters, Local 3688, AFL-CIO, Vallejo Police Officers' Association, Elk Grove Police Officers Association, Ontario Police Officers' Association, Placer County Deputy Sheriffs' Association, Federated University Police Officers' Association and Los Angeles Airport Peace Officers' Association as Amici Curiae on behalf of Real Party in Interest.

**Page 2 – S208181 – counsel continued**

**Counsel:**

Jack Cohen as Amicus Curiae on behalf of Real Party in Interest.

Ram, Olson, Cereghino & Kopczynski, Karl Olson; Juan F. Cornejo; Jeffrey D Glasser; and James W. Ewert for California Newspaper Publishers Association, Los Angeles Times Communications LLC, McClatchy Newspapers, Inc., Hearst Corporation, First Amendment Coalition, Society of Professional Journalists, Californians Aware and the Reporters Committee for Freedom of the Press as Amici Curiae on behalf of Real Party in Interest.

Michael T. Risher, Matthew T. Cagle, Christopher J. Conley; Peter Bibring, Peter Eliasberg; David Loy; and Jennifer Lynch for American Civil Liberties Union Foundation of Northern California, Inc., American Civil Liberties Union of Southern California, Inc., American Civil Liberties Union of San Diego & Imperial County, Inc., and Electronic Frontier Foundation as Amici Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Nora Frimann
Assistant City Attorney
200 East Santa Clara Street, 16th Floor
San Jose, CA 95113-1905
(408) 535-1900

James McManis
McManis Faulkner
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
(408) 279-8700

Karl Olson
Ram, Olson, Cereghino & Kopczynski
555 Montgomery Street, Suite 820
San Francisco, CA 94111
(415) 433-4949