Filed 1/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CYNTHIA ANDERSON-BARKER,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>CITY OF LOS ANGELES,<br><br>    Real Party in Interest. | B285391<br><br>(Los Angeles County Super. Ct. No. BS156058) |

    ORIGINAL PROCEEDINGS in mandate.  Amy D. Hogue, Judge.  Petition for writ of mandate denied.
    Donald Cook for Petitioner.
    No appearance for Respondent.
    Michael Feuer, City Attorney, Blithe S. Bock, Assistant City Attorney, Wendy Shapero, Deputy City Attorneys, for Real Party in Interest.

————————————————

Petitioner Cynthia Anderson-Barker filed a petition under the California Public Records Act (Gov. Code, §§ 6250, et seq., (CPRA)) to compel the City of Los Angeles to disclose electronically-stored data relating to vehicles that private towing companies had impounded at the direction of the Los Angeles Police Department. The City argued the CPRA was inapplicable because it did not possess or control the requested data. The trial court agreed, and denied the petition.

Anderson-Barker filed a petition for writ of mandate seeking an order directing the trial court to vacate its order, and enter a new order directing the City to produce the data. We issued an order to show cause, and now deny the petition.

## FACTUAL BACKGROUND

### A. Background Facts

The Los Angeles Police Department (LAPD) uses privately-owned companies to tow and store impounded vehicles.[1] These tow companies are referred to as "Official Police Garages" (OPGs), and perform their services pursuant to written contracts with the City of Los Angeles. Although the City contracts separately with each OPG, the terms of the contracts are materially identical, except with respect to the covered service area.

When a LAPD officer needs to impound a vehicle, he or she contacts an OPG to tow and store the vehicle. The LAPD officer is required to prepare a "CHP 180 form" that documents the

---

[1] These undisputed "Background Facts" are based in part on the factual summary set forth in *City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272 (*City of Los Angeles*), a prior writ proceeding in this case that addressed an order compelling the City to respond to Anderson-Barker's discovery requests.

2

vehicle seizure.  The officer and the OPG each retain a portion of the CHP 180 form.  The OPG then enters information regarding the impoundment into a database known as the "Vehicle Information Impound Center" (VIIC).  The VIIC resides on a server that is owned and maintained by the "Official Police Garage Association of Los Angles" (OPGLA), a private organization comprised of OPGs.  OPGLA provides public access to certain information on the VIIC through a web-based portal.  The impounding OPG also scans a portion of each CHP 180 form into "Laserfiche," a database that is owned and maintained by an independent document storage company OPGLA contracts with to store OPG-related documents.

Sections 9.3 and 9.4 of the OPG contracts require each OPG to "provide timely information to the VIIC," and to "participate in the [Laserfiche] System maintained by the OPGLA."  However, the contracts do not specify what information the OPG should put into the VIIC or what documents it should scan into Laserfiche.

Section 14.3 of the OPG contracts sets forth various requirements about the retention and inspection of "records generated or kept by the OPG" regarding its City towing services.  The section provides that all such records are "subject to periodic inspection by [the City]," and that "all data and records . . . related to the towing or storage services provided under [the] Agreement" must be "made available without notice, [24 hours-a-day]."  Section 14.3 also prohibits OPGs from "interfer[ing] with, prevent[ing] or refus[ing] to permit concerned law enforcement personnel  . . . to make an examination, inspection or copy of any record kept by the OPG."

Each OPG contract is subject to the "Standard Provisions for City Contracts" ("SPCC"), a series of standardized provisions

that are generally incorporated into any contract the City enters into with a third party. SPCC section 23, entitled "Ownership and License," provides in relevant part: "Unless otherwise provided for herein, all Work Product originated and prepared by CONTRACTOR . . . under this Contract shall be and remain the exclusive property of the City for its use in any manner it deems appropriate." SPCC section 23 defines the term "Work Product" to include (among other things) "all works, tangible or not, created under this Contract including, without limitation, documents, material, data reports, . . . computer programs, and databases . . . and all forms of intellectual property."

### B. Prior Litigation Seeking Disclosure of VIIC and Laserfiche Data

On March 10, 2014, Colleen Flynn submitted a written request to the LAPD seeking all data "recorded in [the VIIC] database," and "[a]ll documents as scanned into Laserfiche regarding vehicle seizures. . . ." Although Flynn's request acknowledged the VIIC data and Laserfiche scans were "stored in systems maintained by [OPGLA]," she asserted that the materials qualified as "public records" because the City's contracts with the OPGs provided it the right to "access and possess" the materials.

The LAPD declined Flynn's request, explaining that the materials she had requested did not qualify as "public records" because it did not own or maintain the computer systems that stored the VIIC and Laserfiche databases. Although the LAPD admitted it had authority to "access" those materials, it asserted that such access did not qualify as "ownership" of those materials, or otherwise transform the materials into public records. The LAPD further asserted that even if the requested

4

information qualified as a public record, it was subject to numerous exemptions set forth in the CPRA.

On March 27, 2014, Flynn filed a petition for writ of mandate pursuant to Government Code section 6258[2] seeking to compel the City of Los Angeles to disclose the VIIC and Laserfiche data. (See *Flynn v. Superior Court*, Superior Court Case No. BS147850 (*Flynn*).) In her supporting legal memorandum, Flynn argued that the language in SPCC section 23 established that the City owned all the data and documents each OPG had generated pursuant to its written agreement, which included all VIIC and Laserfiche data. The City, however, argued that section 14.3 of the OPG contract clarified that the OPG was to "retain . . . the VIIC and Laserfiche records," and set forth the conditions under which the OPG was required to provide those records to the City. In the City's view, section 14.3's retention and access requirements demonstrated that it did not actually own the materials.

The trial court agreed with the City, explaining that SPCC section 23 included language clarifying that the provision applied "'unless otherwise provided for' in the OPG contract." The court concluded that "[section] 14.3 [of the OPG contract] meets the 'otherwise provided for' requirement, thereby negating [the ownership provision set forth in the [SPCC] attachment provision]." The court also noted that the OPG contracts described the circumstances under which the City could access the VIIC and Laserfiche data, which would have been unnecessary if the City owned those materials.

---

[2] Unless otherwise noted, all further statutory citations are to the Government Code.

Flynn filed a petition for writ of mandate seeking immediate review of the trial court's order. (See § 6259, subd. (c).) On February 20, 2015, Division One of this District denied the petition. Flynn then filed a petition for review in the California Supreme Court, which the Court denied.

After the *Flynn* matter concluded, the City amended its OPC contracts to include the following language: "Notwithstanding the Standard Provisions for City Contracts, the OPG VIIC and the data contained therein is owned by the OPG of Los Angeles." The City added identical language regarding any data and documents stored in Laserfiche.

### C. Summary of Anderson-Barker's CPRA Action

#### 1. Anderson-Barker's CPRA petition and the City's prior petition for writ of mandate

On June 4, 2015, petitioner in the current action, Cynthia Anderson-Barker, submitted a request to the LAPD seeking disclosure of a subcategory of the data Flynn had previously sought. Specifically, Anderson-Barker requested the LAPD to disclose: (1) "All data recorded in [the VIIC] database, for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared"; and (2) "All CHP 180 forms for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 was prepared. This includes, but is not limited to documents that are indexed in Laserfiche. . . ."

In response, the LAPD informed Anderson-Barker it would "respond to [the] portion of [her] request" that sought copies of CHP 180 forms located in the LAPD's investigative files. The LAPD declined, however, to provide any VIIC or Laserfiche data, explaining that OPGLA and the OPGs owned and maintained

6

those materials.  The LAPD further explained that "the issue of whether the information in the VIIC database and the documents in the Laserfiche system constituted 'public records' under the CPRA [had been] vigorously litigated in [the *Flynn* action]."  The LAPD noted that after receiving extensive evidence and briefing, the trial court in *Flynn* had ruled that the requested materials were not subject to the CPRA's disclosure requirements, and that the California Court of Appeal had denied a petition for writ of mandate seeking reversal of that decision.

On June 18, 2015, Anderson-Barker, represented by the same attorney who had represented Deborah Flynn (Donald Cook),[3] filed a petition for writ of mandate pursuant to section 6258 seeking to compel the City to disclose the VIIC and Laserfiche data.  The petition asserted that the City's "claim that it does not 'own' the requested public records is false, and [the City] knows its claim is false."  According to the petition, the written contracts between the City and the OPGs made clear that the data belonged to the City, rather than the OPGs or OPGLA.

After the City filed its answer to the petition, Anderson-Barker propounded discovery on the City seeking information related to its claim that it did not own the VIIC and Laserfiche data.  The City objected to each request on the basis that the Civil Discovery Act did not apply to CPRA proceedings.  Anderson-Barker filed a motion to compel responses to her

---

[3]     As discussed in more detail below, petitioner Anderson-Barker, Cook and Flynn are all attorneys who share the same business address.  Cook has litigated a series of actions against "California law enforcement agencies over their respective impoundment practices. . . ." (*County of Los Angeles v. Superior Court* (2015) 242 Cal.App.4th 475, 479.)

discovery arguing that the Civil Discovery Act did apply, and that the City had waived any further objections to the requests. The trial court agreed, and ordered the City to respond to the discovery without further objection. The City filed a petition for writ of mandate in this court seeking an order directing the trial court to vacate its order, and enter a new order denying the petitioner's motion to compel. We granted the petition in part. Although we agreed that the Civil Discovery Act applied to CPRA proceedings, we vacated the portion of the trial court's ruling concluding that the City had waived all further objections. (See *City of Los Angeles, supra,* 9 Cal.App.5th 272.)

### 2. *The parties' briefings regarding Anderson-Barker's CPRA petition*

Following our ruling, Anderson-Barker proceeded with discovery and then filed a memorandum in support of her CPRA petition. The memorandum argued that the VIIC and Laserfiche data were subject to disclosure under the CPRA because the OPG contracts provided the City "unfettered access" to that data.[4] Anderson-Barker also noted that in a separate CPRA action she had initiated against the California Department of Transportation (DOT) (Superior Court Case No. BS159845),[5] the trial court had found that the City did have possession of the

---

[4] Anderson-Barker's memorandum also sought production of all CHP 180 forms the LAPD had stored in a document retention system known as "Documentum." The trial court found this request was overly burdensome. Anderson-Barker's petition for writ of mandate does not challenge that portion of the trial court's ruling.

[5] Anderson-Barker filed Case No. BS159845 against the DOT while the City's petition for writ of mandate challenging the trial court's discovery order was pending before this court.

VIIC database, and ordered the data disclosed. Anderson-Barker asserted that there was no basis for the trial court to depart from that ruling in this case.

The City, however, argued that the VIIC and Laserfiche data were not subject to disclosure because the City did not have actual or constructive possession of the data. The City contended that to establish possession, Anderson-Barker had to show it had a right to control the data in question; the mere fact that it had a right to access the data was insufficient. The City also argued that Anderson-Barker was collaterally-estopped from pursuing her CPRA petition based on the prior ruling in the *Flynn* proceeding. The City asserted that Anderson-Barker was in privity with Flynn because they shared the same office space, used the same attorney (Donald Cook) and had both worked with Cook on similar CPRA actions.

The City also argued the court should not follow the ruling it had made regarding the VIIC data in Case No. BS159845. According to the City, the attorney who defended the DOT in that case had failed to bring the *Flynn* action to the court's attention, and had not submitted any "evidence on the underlying substantive issues regarding the disclosability of the [VIIC] data." The City also noted that it had been unable to comply with the disclosure order issued in that case because OPGLA refused to provide the VIIC data. Anderson-Barker, in turn, had never sought to enforce the order.

In support of its opposition, the City provided a declaration from LAPD Detective Benjamin Jones, who served as the LAPD's "OPG Coordinator." Jones's declaration explained that section 14.3 of the OPG contract showed that the OPGs' only requirements regarding their towing records was to "retain[] the

9

records and mak[e] them available for inspection and audit upon request."[6] Jones further explained that while sections 9.3 and 9.4 of the OPG contract required each OPG to utilize the VIIC and Laserfiche databases, the contract did not require the OPG to "input any specific information into VIIC," or to "store any specific documents in the Laserfiche system." As a result, "each OPG [is left to] decide[] what information regarding its vehicle towing and storage services it inputs into VIIC," and "which documents it stores in the Laserfiche system."

Jones declaration further explained that although the LAPD had "internet access to the VIIC database and . . . Laserfiche system," these databases were not stored on City servers, and City personnel had no "authority to modify (add to or delete from) any of the information in VIIC or any electronic records in Laserfiche. Nor do any City personnel have any control over the contents of either of those databases." Finally, Jones noted that the City had never actually accessed "most of the electronic data in VIIC and . . . Laserfiche." According to Jones, the City had used "a very limited portion of the VIIC" to ensure compliance with the OPG contracts, and had no reason to access the "Laserfiche database" because the LAPD retained its own copies of the CHP 180 forms.

---

**6** Jones also asserted that the City had always interpreted section 14.3 as assigning ownership of all "the records generated and maintained by the OPGs, including the information in VIIC and the documents stored in Laserfiche, . . . to the tow company." Jones further asserted that the language the City had added to the OPG contracts in 2014, which expressly assigned ownership of this data to the OPGs, was only intended to "confirm the parties' historical understanding of the OPG contract."

10

The City also provided a declaration from Gary Minzer, the president of OPGLA and the owner of an OPG. Minzer explained that, as required under section 14.3 of the OPG contracts, each OPG kept and maintained its own records regarding towing services, and made them available to the City for "audit purposes upon requests."[7] Minzer further asserted that the VIIC was "privately owned and operated by OPGLA," and "stored on computer systems which are maintained by the OPGLA." Minzer described "Laserfiche" as a "data storage company" that OPGs use "pursuant to a license . . . to scan and store electronic records pertaining to a vehicle impound. The electronic records reside in Laserfiche's private data storage center." As in Jones's declaration, Minzer asserted that each OPG was responsible for deciding what information to put into the VIIC and Laserfiche databases, and that the City had no authority or ability to alter any of the data or records stored on those systems.

### 3. The trial court's ruling

The trial court denied Anderson-Barker's petition, concluding that the City did not have a duty to disclose the requested data because the evidence showed it did not "possess or control the VIIC or Laserfiche records." In support of its ruling, the court cited statements in the Jones and Mizner declarations asserting that while the City had "internet access" to the data at issue, "it has no physical possession of the data and does not and cannot exercise control, i.e., . . . it does not input the data, cannot

---

[7] Like Jones, Minzer also asserted that OPGLA and the OPGs had always understood and interpreted section 14.3 of the contract to assign ownership of all such records to the OPGs, and not to the City.

add or delete data, cannot manipulate the data etc. [Based on this evidence,] [t]he Court is not persuaded the City in fact has possession or control of the . . . data."[8]

The court acknowledged it had reached a different conclusion regarding the City's possession of the VIIC data in Case No. BS159845. Although the court did not explain why it had changed its ruling in the present case, it did note that neither side had "appealed" its prior ruling, and that "no records ha[d] been produced [pursuant to that] judgment."[9]

Anderson-Barker filed a petition for writ of mandate requesting that we direct the trial court to vacate its order, and enter a new order compelling the City to produce the VIIC and Laserfiche data. In November 2017, we issued an order to show cause.

**DISCUSSION**

*A. Standard of Review*

---

[8]    The Court also found the City's evidence established it did not own the data in question. As explained below, Anderson-Barker's writ petition does not challenge that finding.

[9]    As an alternative basis for its ruling, the trial court agreed with the City's contention that Anderson-Barker was collaterally estopped from seeking disclosure of the VIIC and Laserfiche data based on the order issued in the *Flynn* action. The court found that the ruling in *Flynn* qualified as a final decision on the merits, and that Anderson-Barker was in privity with Colleen Flynn. As explained in more detail below, we affirm the trial court's finding that the City did not have a duty to disclose the VIIC and Laserfiche data because the evidence established it did not possess that data. Accordingly, we need not address the issue of collateral estoppel.

12

"An order of the trial court under the [CPRA] is reviewable immediately by petition to the appellate court for issuance of an extraordinary writ." (*Consolidated Irrigation v. Superior Court* (2012) 205 Cal.App.4th 697, 708 (*Consolidated Irrigation*) [citing § 6259, subd. (c)]; see *also Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 426 (*Filarsky*).) "[W]e . . . conduct an independent review of the trial court's ruling; factual findings made by the trial court will be upheld if based on substantial evidence." (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336 (*Times Mirror*); see also *Caldecott v. Superior Court* (2015) 243 Cal.App.4th 212, 218 ["We conduct an independent review of an order denying a request for documents under the CPRA. [Citation.] The trial court's findings of fact, if any, are reviewed using the substantial evidence test"]; *Consolidated Irrigation, supra*, 205 Cal.App.4th at p. 708 ["'We review de novo the trial court's ruling, but defer to its determination of any express or implied factual findings'"].)

### B. Summary of the CPRA

"The CPRA was modeled on the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.) and was enacted for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies. [Citation.]" (*Filarsky, supra,* 28 Cal.4th at pp. 425-426.) The CPRA requires that, upon request, state and local agencies make available for inspection and copying any public record "[e]xcept with respect to public records exempt from disclosure. . . ."[10] (§ 6253, subd. (b); see also § 6253, subd. (c).)

---

[10] Sections 6254-6254.33 and 6255 set forth numerous categories of public records that are exempt from disclosure

Section 6252 subdivision (e) defines "public record" to mean "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics."[11]

Section 6253, subdivision (c) provides that "upon receiving a request for a copy of public records, [each agency] shall, within 10 days determine whether the request seeks public records in the possession of the agency that are subject to disclosure. If the agency determines that the requested records are not subject to disclosure, . . . the agency promptly must notify the person making the request and provide the reasons for its determination." (*Filarsky*, *supra*, 28 Cal.4th at p. 426.) To establish an agency has a duty to disclose under section 6253, subdivision (c), the petitioner must show that: (1) the record "qualif[ies] as [a] 'public record[]'" within the meaning of section 6252, subdivision (e); and (2) the record is "in the possession of the agency." (*Consolidated Irrigation, supra*, 205 Cal.App.4th at p. 708; see also *Board of Pilot Commissioners v. Superior Court* (2013) 218 Cal.App.4th 577, 597-598 (*Board of Pilot Commissioners*) ["to prevail [on a CPRA petition, the petitioner]

---

under the CPRA. (See *Times Mirror, supra,* 53 Cal.3d at p. 1338.)

[11] The term "writing" is defined to include, among other things, "handwriting, typewriting, printing, . . . transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored." (§ 6252, subd. (g).)

14

must establish that the files (1) qualify as public records and (2) were in the possession of the [agency]"].)  In the context of the CPRA, the term "possession" has been defined to "mean[s] both actual and constructive possession." (*Board of Pilot Commissioners, supra*, 218 Cal.App.4th at p. 598; see also *City of San Jose, supra*, 2 Cal.5th at p. 623.)  "'[A]n agency has constructive possession of records if it has the right to control the records, either directly or through another person.'  [Citation.]" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 609, 623 (*City of San Jose*.)

Whether a record falls within the statutory definition of a "public record" involves a "distinct inquiry" from whether the agency is in possession of that record.  (*Regents of University of California v. Superior Court* (2013) 222 Cal.App.4th 383, 395-401 ["whether the information falls within the meaning of 'public records' is not determined by whether [the agency] has or might have . . . possession of them"; trial court erred by "incorpor[ating] . . . possession into the definition of public records," thus "conflat[ing] two distinct inquiries"]; see also *City of San Jose, supra,* 2 Cal.5th at p. 624 [whether "[a]n agency [has] . . . possession of records" is a "separate. . . . question" from whether a document "constitute[s] a public record [under section 6252, subdivision (e)]"].)  The duty to disclose applies only when the petitioner has satisfied both elements.  (*Consolidated Irrigation, supra*, 205 Cal.App.4th at p. 708 [rejecting petitioner's "contention . . . that it need only demonstrate that the files . . . were 'public records'"; "the duty set forth in Government Code section 6253, subdivision (c) pertains [only] to 'disclosable public records in the possession of the agency'"].)

15

### C. The City's Right to Access the VIIC and Laserfiche Data Is Insufficient to Establish Constructive Possession

In this case, the trial court did not address whether the VIIC and Laserfiche data qualify as a form of "public record" within the meaning of section 6252, subdivision (e). Instead, the court's ruling focused on the issue of possession, concluding that the City does not "possess or control the VIIC or Laserfiche records," and thus has no duty to disclose those records under section 6253, subdivision (c). Anderson-Barker disagrees, contending that the City has possession of the VIIC and Laserfiche data because the OPG contracts provide it "unfettered access" to the data. According to Anderson-Barker, this right of access is, in itself, sufficient to establish "constructive possession."[12] The City acknowledges it has a contractual right to access the data in question, but asserts that merely having access to a record is insufficient to establish constructive possession.

#### 1. The right to access records is insufficient to establish constructive possession

---

[12] In prior CPRA proceedings (and in the original petition to compel production that was filed in this case), Anderson-Barker and her attorney have argued that the City has constructive possession over the VIIC and Laserfiche data because the OPG contracts assign ownership of that data to the City. (See generally *City of San Jose, supra*, 2 Cal.5th at p. 623 [a contractual right of ownership over a record is sufficient to establish constructive possession].) In her current petition for writ of mandate, however, Anderson-Barker has not raised that argument.

16

Anderson-Barker has cited no legal authority supporting the proposition that an agency's right to access the records of a private entity constitutes a form of constructive possession. For purposes of the CPRA, the term "constructive possession" means "the right to control the records." (*City of San Jose*, *supra*, 2 Cal.5th at p. 623.) The term "control" is generally defined as "the power or authority to manage, direct, or oversee." (Black's Law Dict. (9th ed. 2009), p. 378.) As the trial court noted in its order, the City presented evidence showing that it does not direct what information the OPGs place on the VIIC and Laserfiche databases, and has no authority to modify the data in any way. The mere fact that it can "access" the data does not equate to a form of possession or control. To conclude otherwise would effectively transform any privately-held information that a state or local agency has contracted to access into a disclosable public record. Nothing in the text or history of the CPRA suggests it was intended to apply so broadly.

Our conclusion finds support in *Forsham v. Harris* (1980) 445 U.S. 169 (*Forsham*), which rejected a similar argument in the context of the FOIA.[13] The plaintiff in *Forsham* sought

---

[13] "It is well-established that because the CPRA 'was modeled on [the FOIA],' the 'judicial construction of the FOIA . . . "serve[s] to illuminate the interpretation of its California counterpart." [Citation.]' [Citation.]" (*City of Los Angeles, supra,* 9 Cal.App.5th at p. 290 [citing and quoting *Times Mirror, supra*, 53 Cal.3d at p. 1338]; see also *County of Los Angeles v. Superior Court (Axelrad)* (2000) 82 Cal.App.4th 819, 825 ["the two enactments have similar policy objectives and should receive a parallel construction"].) As with the CPRA, to prevail on a FOIA claim, the plaintiff must show (among other things) that the requested record was "in control" of the federal agency "at the time the

17

disclosure of data that a private research organization had relied on in a study funded by a federal grant. Although the research organization retained possession of the data, federal regulations authorized the agency that had provided the grant "to access the data," and to "obtain permanent custody of the [data] upon request." (*Id*. at p. 173.) Although the plaintiff acknowledged the agency had never actually exercised its right to access or take possession of the data, it contended that FOIA extended to "all documents created by a private grantee to which the Government has access." (*Id*. at p. 183.)

The Supreme Court rejected that interpretation, explaining that FOIA only applies to records an agency has "*in fact* [created] or obtain[ed], and not to records which merely *could have been* obtained." (*Forsham, supra,* 445 U.S. at p. 186 [emphasis in original].) The Court further explained that to be disclosable under FOIA, the agency must have a "possessory" interest in the record at issue, and that "potential access to the grantee's information" was insufficient. (*Id*. at p. 185.) Although the Court acknowledged FOIA might apply once an agency had exercised its rights to obtain information from a grantee, disclosure was not required "unless and until that right is exercised." (*Id*. at p. 181.)

We believe a similar analysis applies under the CPRA. As *Forsham* suggests, the City might have a duty under the CPRA to disclose any data it has actually extracted from the VIIC or Laserfiche databases, and then used for a governmental purpose. Anderson-Barker's CPRA request, however, is not limited in such a manner. Instead, she seeks disclosure of all information the OPGs have entered into the VIIC and Laserfiche databases

---

FOIA request is made." (*U.S. Dept. of Justice v. Tax Analysts* (1989) 492 U.S. 136, 145.)

18

regarding City-related impoundments based solely on the fact that the City has the authority to access that information. We agree with *Forsham's* analysis, and conclude that, as with the FOIA, mere access to privately-held information is not sufficient to establish possession or control of that information.

>2. *City of San Jose* does not address whether access to records constitutes a form of constructive possession

Anderson-Barker, however, argues that the Supreme Court's recent decision in *City of San Jose, supra*, 2 Cal.5th at p. 623, demonstrates that a state agency's "right to access and take possession of [a record or data] makes the data public records" regardless of whether the agency "technically 'own[s]' the records." The question decided in *City of San Jose*, however, was whether a government employee's communication regarding official business that had been sent from his personal e-mail account fell within the definition of a "public record" under section 6252, subdivision (e). The agency argued that "a document concerning official business is only a public record [within the meaning of section 6252, subdivision (e)] if it is located on a government agency's computer servers or in its offices." (*Id.* at p. 624.) The Court disagreed, holding that a government employee communication that "otherwise meet[s] [the] CPRA's definition of 'public records' do[es] not lose this status because [it is] located in an employee's personal account. A writing retained by a public employee conducting agency business has been 'retained by' the agency within the meaning of section 6252, subdivision (e), even if the writing is retained in the employee's personal account." (*Id.* at p. 623.) Nothing in the Court's analysis or holding supports the view that an agency's contractual right to access a private entity's records qualifies as a

19

form of "possession" of those records within the meaning of section 6253, subdivision (c).  Indeed, *City of San Jose* does not even address the issue of possession.

## DISPOSITION

The petition for writ of mandate is denied.  The respondent shall recover its costs on appeal.


ZELON,  J.


We concur:


PERLUSS, P. J.


SEGAL, J.