Filed 7/24/23

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BARBER GROUP, INC., | C095058 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2020-80003479-CU-WM-GDS) |
| v. | |
| NEW MOTOR VEHICLE BOARD, | |
| Defendant and Respondent, | |
| AMERICAN HONDA MOTOR CO., INC. et al. | |
| Real Parties in Interest. | |

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion.

1

APPEAL from a judgment of the Superior Court of Sacramento County, Laurie M. Earl, Judge.  Affirmed.

Law Offices of Gavin M. Hughes, Gavin M. Hughes, Robert A. Mayville, Jr.; Clyde & Co. and Douglas J. Collodel for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kelsey Linnett and John T. McGlothlin, Deputy Attorneys General, for Defendant and Respondent.

Nelson Mullins Riley & Scarborough, Shawtina F. Lewis, S. Keith Hutto and Steven McFarland for Real Party in Interest American Honda Motor Co., Inc.

Alan Skobin for Real Party in Interest Galpinsfield Automotive, LLC.


Before a car manufacturer may establish a new car dealership in California, it must notify all its existing brand dealers within 10 miles of the proposed new dealership.  An existing brand dealer that receives this notice may challenge the proposed establishment of the new dealership in a "protest" before California's New Motor Vehicle Board (Board).  In that hearing, the protesting dealer has the burden of proof to establish good cause for the Board to disallow establishment of the new dealership.  (Veh. Code, § 3066, subd. (b).)[1]  But in "any proceeding in which the reasonableness of a performance standard . . . is an issue, the manufacturer . . . shall have the burden of proof." (§ 11713.13, subd. (g)(2).)  Which rule governs when a dealer challenges the reasonableness of manufacturer performance standards in an "establishment" protest? This case calls upon us to answer that question.

Here, Barber Group, Inc., doing business as Barber Honda (Barber)—a car dealer in Bakersfield, California—brought an establishment protest, challenging a decision by American Honda Motor Co., Inc. (Honda) to open a new dealership about nine miles

---

[1]  Undesignated statutory references are to the Vehicle Code.

away.  The Board overruled Barber's protest, and the trial court denied Barber's petition for administrative mandate challenging the Board's decision.  On appeal, Barber argues the Board prejudicially erred when it:  (1) relied on Honda's dealer performance standards at the protest hearing without first deciding whether those standards were reasonable (with Honda bearing the burden of proof on that question), contrary to section 11713.13, subdivision (g); (2) permitted the proposed new dealership to exercise a peremptory challenge to an administrative law judge initially assigned to the protest hearing, contrary to notions of fairness and the Board's own order in the matter; and (3) denied Barber's request that it take official notice of the effects of the COVID-19 pandemic.  We affirm.

## BACKGROUND

Barber, the sole Honda dealer in the Bakersfield area for over 45 years, sits in an "auto mall" where most major brands are represented, including Toyota, Honda's primary competitor.  The nearest Honda dealership is approximately 67 miles away.

In October 2017, Honda informed Barber it intended to establish a new dealership north of the City of Bakersfield, about 9.1 miles away from Barber, and 0.5 miles from a second Toyota dealership in the area.  Most people in the greater Bakersfield area live in the space between the proposed site and Barber.

After Barber filed its protest to the establishment of the new dealership, an administrative law judge (ALJ) heard evidence from 15 witnesses over 16 days between September 2019 and January 2020.  In June 2020, the ALJ issued a 43-page proposed decision, concluding Barber failed to demonstrate good cause to disallow establishment of the new Honda dealership.

Pertinent here, the ALJ found the proposed new dealership would "not materially impact Barber," because "sales will increase."  This was a reasonable inference, the ALJ explained in part, because on three prior occasions in other parts of the country, after Honda added a new dealership where there already were existing dealerships in a market,

3

five of the six prior existing dealerships had increased sales. Further, the ALJ reasoned, the proposed new dealership would lead to "more advertising promoting the . . . Honda brand in the market area" and "provide another option for customers to have their vehicles serviced," potentially influencing Toyota buyers to buy a Honda instead.

The ALJ also found that "Honda's brand [was] not adequately represented in the Bakersfield Metro" area. Barber was "not capturing the available opportunity" to sell Hondas, making the dealership "one of . . . Honda's worst performers in California." The ALJ rejected any suggestion by Barber that Honda had the burden to prove the reasonableness of any performance standards ostensibly undergirding these findings, explaining that "the burden is on Barber . . . and [s]ection 11713.13[, subdivision ](g) is inapplicable here because that section applies" when "measuring the performance of an individual dealer, which is not an issue in this case."

After the Board adopted the ALJ's proposed decision as its own ruling, Barber challenged the decision in a petition for writ of administrative mandate, which the trial court denied. Barber timely appealed. Barber's opening brief was filed on October 7, 2022. The case became fully briefed on February 6, 2023, and was assigned to this panel shortly thereafter.

DISCUSSION

I

*Dealer Protests & Performance Standards*

Barber argues the Board erred when it relied on Honda's dealer performance standards in rejecting Barber's establishment protest without first determining the reasonableness of the standards, with Honda bearing the burden of proof on that question. The Board does not dispute it considered Honda's dealer performance standards. Rather, it contends section 11713.13, subdivision (g) did not apply to Barber's establishment protest. We agree with the Board.

4

When analyzing the respective texts of relevant statutes, the " ' "court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions." ' " (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955 (*Public Health*).) The statutory considerations found within section 3066, subdivision (b) and the considerations found within section 11713.13, subdivision (g) conflict in the context of establishment protests. We must harmonize the conflicting statutes to the extent we can "and thus one must be interpreted as providing an exception to the other." (*Public Health,* at p. 956.) Here, the more specific establishment protest statutory scheme provides an exception to the performance standards statutory scheme.

A.      *Standard of Review*

The parties agree this mandamus appeal is governed by Code of Civil Procedure section 1094.5, subdivision (b), which frames the relevant inquiry as whether the Board "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [Board] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

Where, as here, the relevant facts are undisputed, and the appellant's claim an agency failed to proceed in a manner required by law concerns the interpretation of a statute, the standard of review is de novo. (*Christensen v. Lightbourne* (2017) 15 Cal.App.5th 1239, 1251.) We review without reference to the trial court's decision. (*McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1786.)

B.      *Legislative Background*

1.      *Existing Car Dealer Protests*

Concerns about the disparity in bargaining power between car manufacturers and car dealers in California prompted the Legislature " ' "to enact legislation to protect retail

5

car dealers from perceived abusive and oppressive acts by the manufacturers." ' "
(*Subaru of America, Inc. v. Putnam Automotive, Inc*. (2021) 60 Cal.App.5th 829, 836.)
In that regard, and in order to prevent "undue control" of car dealers by manufacturers,
section 3000 et seq. and section 11700 et seq. " 'establish a statutory scheme
regulating' " this relationship. (*Subaru*, at p. 843; § 3000, as amended by Stats. 1973, ch.
996, § 1 [legislation "necessary . . . to avoid undue control of the independent new motor
vehicle dealer by the vehicle manufacturer"].)

In 1973, the Legislature empowered the Board to adjudicate certain disputes
between manufacturers and dealers, including disputes regarding the establishment of
new dealerships in California. (*Mazda Motor of America, Inc. v. New Motor Vehicle Bd*.
(2003) 110 Cal.App.4th 1451, 1458.) Now, before a manufacturer may establish a new
dealership in California, it must notify the Board and each existing dealer of the "same
line-make" (i.e., the same brand) within 10 miles of the potential new dealership.
(§ 3062, subd. (a)(1); § 507 ["The 'relevant market area' is any area within a radius of 10
miles from the site of a potential new dealership"].) An existing dealer that receives this
notice "may file with the board a protest to the proposed dealership establishment."
(§ 3062, subd. (a)(1).)

If a protest is filed, there must be an evidentiary hearing to determine whether
"there is good cause for not permitting the establishment of the proposed dealership."
(§ 3062, subd. (a)(1).) In that hearing, the Board must consider "existing circumstances,
including, but not limited to": (a) the permanency of the existing dealer's investment; (b)
the effect "on the retail motor vehicle business and the consuming public in the relevant
market area"; (c) whether establishment of a new dealership is "injurious" to the public
welfare; (d) whether the manufacturer's existing dealers of the same brand "in the
relevant market area" of the potential new dealership are providing "adequate
competition and convenient consumer care" for the manufacturer's vehicles "in the
market area, which shall include the adequacy of motor vehicle sales and service

6

facilities, equipment, supply of vehicle parts, and qualified service personnel"; and (e) whether establishment of a new dealership "would increase competition and therefore be in the public interest." (§ 3063.)

At the establishment protest hearing, *the dealer has the burden of proof* to show good cause to disallow establishment of the new dealership. (§ 3066, subd. (b).) By contrast, if a manufacturer seeks to end its relationship with an existing dealer, and that dealer files a termination protest, the *manufacturer* has the burden of proof to show good cause for ending the franchise relationship. (*Ibid.*; see § 3060, subd. (a).) In such a termination protest, the Board must consider "existing circumstances, including, but not limited to": (a) the amount of business transacted by the dealer, as compared to the business available to the dealer; (b) investment necessarily made and obligations incurred by the dealer in connection with the franchise arrangement with the manufacturer; (c) the permanency of that investment; (d) whether termination will be "injurious or beneficial" to the public welfare; (e) whether the dealer has adequate motor vehicle sales and service facilities, equipment, vehicle parts, and qualified service personnel to reasonably provide for the needs of the consumers for the motor vehicles handled by the dealer and has been and is rendering adequate services to the public; (f) whether the dealer fails to fulfill the warranty obligations of the manufacturer to be performed by the dealer; and (g) the extent of the dealer's failure to comply with the terms of the franchise. (§ 3061.)

### 2. *Performance Standards*

Decades after enactment of section 3066's text identifying the holder of the respective burden of proof depending on the type of dealer protest at issue, the Legislature in 2013 made it unlawful for a manufacturer to "[e]stablish or maintain a performance standard, sales objective, or program for measuring a dealer's sales, service, or customer service performance that may materially affect the dealer, including . . . the dealer's right to payment under any incentive or reimbursement program" unless the performance standard "is reasonable" in light of various enumerated circumstances. (§

7

11713.13, subd. (g)(1)(A), as amended by Stats. 2013, ch. 512, § 19, eff. Jan. 1, 2014.) Section 11713.13, subdivision (g)(2) declares: "In *any proceeding* in which the reasonableness of a performance standard, sales objective, or program for measuring dealership sales, service, or customer service performance is an issue, the *manufacturer . . .* shall have the burden of proof." (Italics added.)

C.      *Forums for Resolution of Dealer-Manufacturer Disputes*

"[N]ot every . . . dispute" between dealers and manufacturers "is within the province of the Board." (*Mazda Motor of America, Inc. v. New Motor Vehicle Bd*., *supra*, 110 Cal.App.4th at p. 1456.) The Board's jurisdiction is "limited by its statutory authorization"—specifically, section 3050, subdivision (c) and section 3050, subdivision (d). (*Mazda Motor*, at pp. 1457-1458.) And the Board's jurisdiction to hear certain dealer protests "does not preclude a civil action when the facts show unreasonable conduct by the [manufacturer] in violation of other statutes and general contract law." (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 879; § 3050, subd. (e) ["Notwithstanding subdivisions (b), (c), and (d), the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts"].)

Among the statutory claims a dealer may bring "directly in any court of competent jurisdiction" (§ 3050, subd. (e)) is a claim concerning rights enumerated in sections 11713.3 and 11713.13. (See *Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A., supra*, 221 Cal.App.4th at p. 879 [the Board's jurisdiction to decide some matters "does not preempt or limit a dealers' section 11713.3 . . . rights"].) In addition to civil actions, some disputes between manufacturers and dealers that do not go to the Board also may be resolved in arbitration. (See *Subaru of America, Inc. v. Putnam Automotive, Inc.*, *supra*, 60 Cal.App.5th at pp. 845-846 [explaining that former § 11713.3, subd. (g) permitted arbitration "in any circumstance" and that—after a 2011

amendment—the current version of § 11713.3, subd. (g) permits arbitration if all parties consent in writing].)

D.    *Ascertainment of Legislative Intent*

When interpreting a statute, courts must " ' "determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

Where reasonably possible, a court must harmonize potentially inconsistent statutes to give force and effect to all the provisions. But this requirement "is not a license to redraft the statutes to strike a compromise that the Legislature did not reach." (*Public Health*, *supra*, 60 Cal.4th at pp. 955-956.)

E.    *Analysis*

When it comes to an establishment protest, the two statutory schemes at issue here are irreconcilable.

Section 3066, subdivision (b) declares that in "a hearing on a protest . . . the [manufacturer] shall have the burden of proof to establish that there is good cause to . . . terminate . . . a [dealership]," and the *dealer* "shall have the burden of proof to establish that there is good cause not to . . . establish[ ] an additional motor vehicle dealership"

9

(§ 3066, subd. (b).) Section 3063 lists the five existing circumstances the Board must consider, but is not limited to considering, when determining whether there is good cause not to establish a new dealership. (§ 3063.) Section 11713.13, subdivision (g)(2) declares that in "*any proceeding* in which the reasonableness of a performance standard . . . is an issue, the *manufacturer* . . . shall have the burden of proof." (Italics added.) Because the dealer has the burden of proof in an establishment protest, and the manufacturer has the burden of proof in "any proceeding in which the reasonableness of a performance standard" is an issue, the statutes are irreconcilable when a dealer challenges the reasonableness of a manufacturer's performance standards in an establishment protest.

Barber maintains we can harmonize the two statutes by construing the statutes as imposing "more than one" burden of proof in this scenario. "Barber had the burden to show there was good cause to prevent the establishment of an additional Honda franchise," Barber says, but Honda had the "burden to show . . . its performance standards were reasonable in light of all existing circumstances when it offered these standards as evidence." Such harmonization is impermissible, because it in effect rewrites both statutes by striking a compromise the Legislature did not reach. (*Public Health*, *supra*, 60 Cal.4th at pp. 955-956; *id.* at p. 958 [the proposed harmonization impermissibly "result[ed] in a . . . scheme . . . inconsistent with the requirements of either statute"].)

Under Barber's theory, the words "as to that issue" would be added to the end of section 11713.13, subdivision (g)(2), so that the statute would read, in relevant part: "In any proceeding in which the reasonableness of a performance standard . . . is an issue, the manufacturer . . . shall have the burden of proof *as to that issue*." (Cf. Evid. Code, § 550, subd. (b) ["The burden of producing evidence as to a particular fact is initially on the party with the burden of proof *as to that fact*" (italics added)].)

10

And the proposed harmonization Barber argues for would add the words, "except when the reasonableness of a performance standard is an issue" to section 3066, subdivision (b), so that the statute would read, in relevant part: "The [dealer] shall have the burden of proof to establish that there is good cause not to enter into a franchise establishing an additional motor vehicle dealership or relocating an existing motor vehicle dealership *except when the reasonableness of a performance standard is an issue*."

Because it is not " 'reasonably possible' to harmonize these statutes 'without distorting their apparent meaning,' " we must decide which of the statutory schemes "must be treated as an exception" to the other. (*Public Health*, *supra*, 60 Cal.4th at p. 960.) In such a case, " 'more specific provisions take precedence over more general ones,' " even if the more general provisions were enacted later. (*Ibid*.)

Here, the establishment protest statutory scheme is more specific, as it "demonstrates that the Legislature thought carefully and specifically about the importance of" (*Public Health*, *supra*, 60 Cal.4th at p. 961) existing dealer objections to the establishment of new dealerships nearby, and concluded existing dealers are "adequately protected" (*ibid*.) by being permitted to bring a protest to the Board, at which the *dealer* bears the burden of proof on five enumerated circumstances and *any other circumstance* the Board might consider (§§ 3063, 3066, subd. (b)).

Legislative history supports this conclusion. The legislative history of section 11713.13, subdivision (g) reflects an intent to amplify existing law (found in sections 11713.3 and 11713.13) making it unlawful for a manufacturer to "take specified *actions against a . . . dealer*." (Sen. Com. on Judiciary, analysis of Sen. Bill No. 155 (2013-2014 Reg. Sess.) as amended Apr. 22, 2013, pp. 4-5, italics added; Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 155 (2013-2014 Reg. Sess.) as amended Sept. 6, 2013, p. 5, italics added.) The establishment of a new dealership is not an action "against" a dealer, because a new dealership does not necessarily harm an existing dealer,

11

and may even help it. Indeed, the ALJ found (and Barber does not dispute in this appeal) that on three specific prior occasions when a new Honda dealership was added to a market, five of six existing Honda dealers had *increased* sales.

In 2019, the Legislature added section 3065.3, permitting dealers to file a protest with the Board for determination of whether a manufacturer has established or maintained a performance standard inconsistent with section 11713.13, subdivision (g). (Stats. 2019, ch. 796, § 14.) Legislative history reflects it was the Legislature's understanding that, prior to the 2019 enactment, dealers could challenge the reasonableness of manufacturer performance standards at the Board *only* when "bringing a protest as a result of a termination." (Assem. Com. on Transportation, analysis of Assem. Bill No. 179 (2019-2020 Reg. Sess.) as introduced Jan. 9, 2019, p. 7 ["dealers cannot protest these performance standards to the [Board] unless they are . . . bringing a protest as a result of a termination"].) By contrast, a committee analysis explained, the proposed legislation would permit dealers to bring such challenges "at any time, not just when the failure to meet a prohibited performance standard costs them their business." (*Ibid.*)

This understanding of the scope of dealer protests at the time the Legislature was considering adding section 3065.3 is consistent with the 2013 legislative history (a termination is clearly an action "against" a dealer) and necessarily *excludes* establishment protests as forums for challenging the reasonableness of a manufacturer's performance standards. (See *Scott v. City of San Diego* (2019) 38 Cal.App.5th 228, 237-239 [explaining the Legislature's views of prior legislation, including views expressed in committee reports and analyses, is entitled to consideration by the courts when ascertaining legislative intent behind the prior legislation].)[2]

---

[2] In their appellate briefing and at oral argument, the parties disputed how, if at all, section 3065.3 indicates whether the Board currently has or ever had jurisdiction to

12

Other aspects of the statutory schemes point in the same direction. One factor the Board must consider in a "termination" protest, where the *manufacturer* has the burden of proof, is the amount of business transacted by the dealer "as compared to the business available to the [dealer]." (§ 3061, subd. (a).) To the extent performance standards undergird a manufacturer's contention regarding "business available" to an individual dealer, it makes sense that (1) the reasonableness of those standards is subject to challenge in a termination proceeding, and (2) the manufacturer has the burden to prove reasonableness.

But the Board is not required to consider a protesting dealer's sales as compared to the business available to that dealer in an establishment protest. Rather, the Board is tasked with considering the circumstances of the broader "relevant market area." (§ 3063, subd. (b) [effect "on the retail motor vehicle business and the consuming public in the relevant market area"]; *id.*, subd. (d) [whether the manufacturer's existing dealers "in the relevant market area" of the potential new dealership are providing "adequate competition and convenient consumer care" for the manufacturer's vehicles].) The term "market area" does not appear in section 3061, the statute enumerating dealer "termination" factors. This makes sense because the focus of section 3063 is on a

---

adjudicate—in an establishment protest hearing—questions arising under section 11713.13, subdivision (g). In its proposed decision, the ALJ did not address the question of the Board's jurisdiction to adjudicate questions under section 11713.13, subdivision (g), ruling only that the provision was "inapplicable" to Barber's establishment protest. Accordingly, because the Board—having adopted the ALJ's proposed decision—did not adjudicate the scope of its jurisdiction to decide section 11713.13, subdivision (g) questions, we decline to do so in the first instance. (See *People v. Chadd* (1981) 28 Cal.3d 739, 746 ["We will not . . . adjudicate hypothetical claims or render purely advisory opinions"].)

13

*manufacturer's* overall sales and room for growth in the relevant market, rather than the narrower question—in section 3061—of an individual dealer's sales.[3]

Accordingly, because the establishment protest statutory scheme provides an exception to the performance standards statutory scheme, section 11713.13, subdivision (g) was inapplicable in Barber's section 3066, subdivision (b) protest. Thus, the Board did not fail to proceed in the manner required by law to the extent it considered Honda's performance standards without first making explicit findings regarding the reasonableness of those standards (with Honda bearing the burden of proof on that question).

F.      *Barber's Other Related Arguments*[4]

Barber argues the reasonableness of Honda's dealer performance standards and the question of whether the standards "are reliable evidence" are "existing circumstances" the Board must consider under section 3063. But section 3063 is explicit about the five existing circumstances the Board *must* take into consideration when deciding whether good cause has been established to stop the establishment of a new dealership. Neither the reasonableness of performance standards nor the reliability of those standards as evidence are on that list. Accordingly, since the Board has discretion which circumstances to consider, if any, beyond the five enumerated circumstances listed in section 3063, this argument is unpersuasive.

---

[3] As the Board contends, it is entirely plausible that establishment of a new dealership will be proper even when existing dealers (or a sole dealer) in a market area exceed manufacturer expectations.

[4] We decline to address Barber's forfeited arguments that are not presented under a separate heading in the opening brief and/or raised for the first time in the reply brief. (See *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 [failure to provide proper headings forfeits issue discussed but not identified by a separate heading]; *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 987 [generally, arguments raised for the first time in a reply brief are forfeited].)

Invoking nonprecedential decisions wherein the Board supposedly applied section 11713.13, subdivision (g) when performance standards were offered as evidence in termination protests,[5] Barber contends there is no legitimate reason for the Board to treat establishment protests differently. But as we explained above, there is such a reason: section 3066, subdivision (b) and section 11713.13, subdivision (g)(2) are irreconcilable. Barber contends the notion of "conflicting burdens of proof"—where "more than one burden might exist within the same action"—present in "other legal contexts," is relevant here. But this contention seeks something impermissible: a rewriting of the statutes to strike a compromise the Legislature did not reach.

Finally, as we conclude the Board did not fail to proceed in the manner required by law, Barber's argument the Board's error was *prejudicial* is unpersuasive.

## II

### *Peremptory Challenges*

Barber contends the Board erred by permitting Honda's proposed new dealer—Galpinsfield Automotive, LLC (Galpinsfield)—to peremptorily challenge an ALJ assigned to the protest hearing. We disagree. Board regulations in effect at the time permitted Galpinsfield's peremptory challenge to an ALJ.

A. *Additional Background*

Galpinsfield moved to intervene in Barber's protest. By order dated December 27, 2017, an ALJ granted Galpinsfield's motion. In that order, the ALJ explained that Barber and Honda had "orally stipulated" seven days earlier "to permit Galpinsfield to

---

[5] Government Code section 11425.60, subdivision (a) says a "decision may not be expressly relied on as precedent unless it is designated as a precedent decision by the agency." Barber concedes the decisions are not precedential, but insists consideration of the decisions "is relevant" here. The Board asks us to disregard the decisions as nonprecedential, but also contends the decisions are inapposite to this matter because they concerned termination protests. We need not consider the substance, or even existence, of those decisions in order to reject this argument.

15

participate in these proceedings as an Intervenor subject to the terms stated herein."
Accordingly, the ALJ ordered, Galpinsfield shall be permitted to present evidence at the
hearing, participate in the cross-examination of witnesses at the hearing, and participate
in settlement negotiations. The order went on to set conditions for Galpinsfield's
"participation in the discovery process," explaining, inter alia, that Galpinsfield's
"discovery rights shall be supplemental to and not be duplicative of the discovery
conducted by" Honda.

In January 2019, Honda and Galpinsfield used their respective peremptory
challenges on two different ALJs. There is no dispute that, when the evidentiary hearing
began in September 2019, the Board's regulations permitted any "party"—including an
intervenor—to exercise one peremptory challenge of the ALJ assigned to preside over an
establishment protest. (Former Cal. Code Regs., tit. 13, §§ 550, 551.12, subd. (b).)[6]

B.     *Analysis*

Barber contends Honda and Galpinsfield unfairly coordinated to eliminate the two
ALJs they believed were adverse to their legal positions. We reject this contention
unsupported by cites to the record. (*Lewis v. County of Sacramento* (2001) 93
Cal.App.4th 107, 113-114.) Similarly, we reject as unsupported the contention the Board
effectively denied Barber's right to a peremptory challenge, because Honda and
Galpinsfield eliminated all other Board ALJs. (*Ibid*.) Further, we note Barber does not
argue it ever actually sought to exercise a peremptory challenge to the purportedly sole
remaining Board ALJ.

---

[6] In December 2019, the Board changed its regulations (effective April 2020) so that an
intervenor no longer is considered a "party" to an action for the purposes of filing a
peremptory challenge to an assigned ALJ. (Cal. Code Regs. tit. 13, §§ 550, 551.12,
Register 2019, No. 51 (Dec. 20, 2019) Digest of New Regulations, p. 3.)

Barber contends the Board's telephone logs, seemingly akin to trial court minutes, reflect that during a telephone conference between the parties and an ALJ around the time of the December 2017 order granting Galpinsfield's motion to intervene, the ALJ stated Galpinsfield's " 'rights will be supplemental to' " Honda and that this statement demonstrates the December 2017 order did *not* contemplate Galpinsfield's right to a peremptory challenge, "which was a right in addition to" Honda's rights, "not supplemental" to them.

This argument assumes without citation or explanation that "supplemental" has a substantively different meaning than "in addition to." (But see Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 1255, col. 2 [defining "supplement" as "something that completes *or makes an addition*" (italics added)].) Regardless of Barber's understanding of the meaning of "supplemental," we reject this contention because it relies on a conflict in language between the telephone logs and the ALJ's December 2017 order. The considered December 2017 written order, which referenced an earlier telephone conference at which the parties stipulated to Galpinsfield's intervenor status subject to terms stated in the order, controls over the telephone logs. (Cf. *People v. Smith* (1983) 33 Cal.3d 596, 599 [where there is an irreconcilable conflict in the record, " 'that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence' "]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268 [written ruling supersedes judge's oral comments, because a judicial officer "retains inherent authority" to modify its decision "at any time before entry" of the written ruling].)

The December 2017 order does not say that *all* of Galpinsfield's rights as an intervenor would be "supplemental to and not be duplicative of" Honda's rights. It says that Galpinsfield's "*discovery rights* shall be supplemental to and not be duplicative of

the discovery conducted by" Honda. (Italics added.)[7] A peremptory challenge is not a discovery right.

In light of Board regulations that explicitly recognized an intervenor's right to exercise a peremptory challenge, Barber's interpretation of the December 2017 order as implicitly prohibiting that right is not persuasive. Also unpersuasive is Barber's reliance on a case discussing peremptory challenges to judicial officers under Code of Civil Procedure section 170.6, an entirely distinct statutory scheme with important differences in language. (Compare Code Civ. Proc., § 170.6, subd. (a)(4) ["only one motion for each *side* may be made in any one action" (italics added)] with Cal. Code Regs., tit. 13, § 551.12, subd. (b) ["Each *party* . . . is entitled to one peremptory challenge" (italics added)].)

### III

### *Effects of the COVID-19 Pandemic on Existing Circumstances*

Barber contends the Board erred by refusing to take official notice "of the ongoing" COVID-19 pandemic and its "effect upon existing circumstances." We disagree. Barber has not shown the Board abused its discretion in denying Barber's request, which was filed after the evidentiary record closed.

A.      *Additional Background*

The record in Barber's protest closed in February 2020. In May 2020, Barber requested the ALJ take notice of the effects of the COVID-19 pandemic, including the decades-low rate of new car sales nationwide and the high unemployment rate in California. The ALJ denied that request in the June 2020 proposed decision, observing

---

[7] We decline to address Barber's argument raised for the first time in the reply brief that other regulations permitted the Board to preclude Galpinsfield from exercising a peremptory challenge. (See *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.*, *supra*, 36 Cal.App.5th at p. 987.)

the request implicated "a number of considerations and issues" such as (1) whether Honda and Galpinsfield would be entitled to introduce evidence in response to any evidence Barber submitted, and (2) whether the parties' respective experts would need to "update" their evidence that had already been submitted. As noted above, the Board adopted in full the ALJ's proposed decision.

B.     *Analysis*

The parties agree Government Code section 11515 governs the Board's denial of Barber's request for official notice of the COVID-19 pandemic. The statute provides in relevant part: "In reaching a decision official notice *may* be taken, either before or after submission of the case for decision, of any generally accepted technical or scientific matter within the agency's special field, and of any fact which may be judicially noticed by the courts of this State." (Gov. Code, § 11515, italics added.)

Barber argues that "[a]s a matter of law and public policy" the Board should have taken "official notice of the ongoing [p]andemic" and its "effect upon existing circumstances." Barber acknowledges the Board had discretion to deny the motion, but does not persuasively demonstrate how the Board *abused* that discretion when it denied the motion—apparently out of concern for an undue consumption of time if the evidentiary record were reopened. (Cf. Evid. Code, § 454, subd. (a)(2) [in determining the propriety of taking judicial notice of a matter, Evid. Code, § 352 applies]; Evid. Code, § 352 [a court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time]; *People v. Cross* (2005) 127 Cal.App.4th 63, 73 [when conducting review under the abuse of discretion standard, reviewing courts should ask if the challenged decision exceeded the bounds of reason; "it is not sufficient to show facts affording an opportunity for a difference of opinion"]; *Lee v. Board of Civil Service Comrs*. (1990) 221 Cal.App.3d 103, 108 [courts should presume an administrative agency "performed its duties as required by law" and the challenging party has the "burden to demonstrate that

19

the administrative proceedings were unfair or constituted an abuse of discretion"].)
Accordingly, this claim lacks merit.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to the Board and real parties in interest.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                                          _____/s/_____
                                                         BOULWARE EURIE, J.


We concur:


_____/s/_____
HULL, Acting P. J.


_____/s/_____
KRAUSE, J.