Filed 3/28/25; Certified for Publication 4/23/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DESOLINA DI LAURO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF BURBANK,<br><br>    Defendant and Respondent. | B334408<br><br>(Los Angeles County<br>Super. Ct. No.<br>23STCV15014) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge. Reversed and remanded with directions.

Munck Wilson Mandala and Jenifer C. Wallis; Stieglitz Law and Jonathan A. Stieglitz for Plaintiff and Appellant.

Joseph McDougall, City Attorney, Rodolfo Aguado III, Assistant City Attorney for Defendant and Respondent.

————————————

# INTRODUCTION

Plaintiff and appellant Desolina Di Lauro filed a putative class action against defendant and respondent City of Burbank (City), alleging the City violated the California Public Records Act (CPRA; Gov. Code, § 7920.000 et seq.) and the California Constitution.[1]  Plaintiff appeals from the judgment entered after the trial court sustained the City's demurrer without leave to amend.  We agree with the trial court that plaintiff cannot proceed on her class claims.  However, the complaint allegations are sufficient for plaintiff to pursue her individual claim.  Accordingly, we reverse the judgment and remand with directions to enter a new order sustaining the demurrer as to the class claims and overruling the demurrer to plaintiff's individual CPRA claim.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.      Factual Background

The City maintains a website that includes a method to submit requests for public records under the CPRA.  The City also maintains an email address where individuals can submit requests for public records.  The City's Department of Water and Power (DWP) maintains a website separate from the City's website, and the DWP's website has a "Contact Us" button providing members of the public a means to communicate with the DWP through either a phone number or a link to "Send us an

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

Email."  However, the DWP website does not contain a link to the City's website, or any identified means specifically for requesting public records.

After receiving a water bill from DWP that she believed to be erroneous, plaintiff accessed the DWP website "to submit a request for publicly available documents—i.e., she requested her past electric bills to determine the reasons for the increase in her utility bill."  On January 9, 2023, plaintiff sent a records request via the "Contact Us" portal on the DWP website.  She sent a second request on January 15, 2023, and a third request on March 3, 2023.  She did not receive a response to any of her requests.  On May 2, 2023, plaintiff posted a message on the social media application NextDoor complaining about the City's failure to respond to her requests.  After she posted on NextDoor, plaintiff received a phone call from a customer service representative, but the City did not send the requested records or an email extending the time to respond to plaintiff's request.

## B.  <u>Procedural History</u>

Plaintiff filed a complaint on June 27, 2023, suing on behalf of herself and similarly situated class members.  The complaint stated a single cause of action for violation of the California Constitution and the CPRA.  The case was designated as a complex matter, with an initial status conference scheduled for October 31, 2023.  Anticipating a demurrer, plaintiff filed an amended complaint.

The amended complaint again alleged a single cause of action for violation of the California Constitution and the CPRA, based on the City's failure to comply with its obligation to

respond to a request for public records and to make such records available for inspection within the statutory period.

We briefly summarize the complaint allegations. Although the City permits record requests through a Burbank City Clerk email address identified on the City's website, the DWP does not have a method for members of the public to submit CPRA requests through the DWP website. Plaintiff alleges the City's failure to respond to her 2023 requests, and the absence of any means to request public records through the DWP website, violated the CPRA. Plaintiff asserted claims on behalf of herself and two distinct classes: (1) the "Timeliness Class," defined as all persons who requested records from the City but the City did not meet the relevant CPRA deadline; and (2) the "Burbank Class," defined as all residents of the City who had been prohibited or deterred from submitting a CPRA request because "the DWP and other specific departments within the City" do not offer a means to submit a CPRA request. Members of the proposed classes were sufficiently numerous and ascertainable, and their claims raised common issues of law and fact. Plaintiff's claims were typical of class members, plaintiff could fairly and adequately protect their interests, and class treatment was superior to other methods, because the cost of litigating individual claims would be prohibitively high, and the remedy would involve requiring the City to "implement policies, procedures, and systems for ensuring timely and complete compliance with the CPRA with respect to the DWP."

On October 24, 2023, the City filed a general demurrer, arguing plaintiff failed to state a cause of action under the CPRA, the purported class action was barred, and the purported class was not likely to be certified. The City attached a letter from the

4

City Attorney's office stating the City had no record of receiving any communication from the plaintiff on the dates alleged in the complaint.  The City did not, however, file a request for judicial notice or make any argument about judicial notice.  On the same day, the City also filed a motion for sanctions with supporting declarations, including a declaration that described the City's search for email correspondence from plaintiff.  Plaintiff opposed both the demurrer and the motion for sanctions.

On November 20, 2023, the trial court sustained the City's demurrer without leave to amend.  The trial court explained that the City's demurrer attacked plaintiff's complaint in two ways.  First, the City argued that plaintiff's class allegations were contrary to the CPRA's statutory language.  Second, plaintiff's allegations failed to state an individual claim under the CPRA.  The trial court agreed with the City that the language of the CPRA and supporting case law limited plaintiff's ability to pursue a class claim because only the party who has made a request for records is entitled to pursue judicial relief.  On plaintiff's individual claim, the trial court reasoned that because the City provides a method for submitting CPRA requests through the City's website, plaintiff's claim was based solely on DWP's failure to provide a method for submitting a CPRA request through the DWP website.  The court reasoned that the City's statutory duty to assist members to identify records or provide suggestions for overcoming practical obstacles to accessing public records was not a clear enough legislative mandate to support plaintiff's claim that the absence of CPRA information on the DWP website violated the CPRA.  The court also denied the City's motion for sanctions, reasoning that although it was rejecting plaintiff's arguments in support of her

5

complaint, her arguments were not frivolous, and there was "no case directly on point as to whether or not a class claim can be brought under the CPRA."

Judgment in favor of the City was entered on December 15, 2023. Plaintiff filed a notice of appeal on December 27, 2023.

## DISCUSSION

### A.      <u>Appellate Jurisdiction</u>

We must first address whether the trial court's ruling on CPRA issues is reviewable on appeal from the judgment. (*Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 291 [independent duty to consider jurisdictional prerequisite].) The parties assume appellate jurisdiction exists because plaintiff appeals from a final judgment. Generally, a party seeking to challenge an adverse determination under the CPRA must proceed by extraordinary writ within twenty days of the court's adverse order. (§ 7923.500; *Committee to Support Recall of Gascón v. Logan* (2023) 94 Cal.App.5th 352, 367–369 (*Gascón*) [dismissing appeal from adverse determination]; *Austin v. City of Burbank* (2021) 67 Cal.App.5th 654, 656.) To the extent our appellate jurisdiction may be in question, we exercise our discretion to treat plaintiff's appeal as a petition for writ relief. (*Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 142; but see *Austin v. City of Burbank, supra*, at p. 656 [declining to construe notice of appeal as writ petition, noting that the notice was filed past the deadline for filing a writ petition].)

**B.     Standard of Review and Principles of Statutory Construction**

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)  "In making this determination, we must accept the facts pleaded as true and give the complaint a reasonable interpretation.  [Citation.]"  (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 762.)

"The general principles that govern review of an order sustaining a demurrer apply to an order specific to class allegations.  [Citations.]"  (*Maarten v. Cohanzad* (2023) 95 Cal.App.5th 596, 608–609 (*Maarten*.)  "Although a court generally determines whether a case is suitable for class treatment on a motion for class certification, it is 'beyond dispute that trial courts are permitted to decide the issue of class certification on demurrer.'  [Citation.]"  (*Id.* at p. 608.)  "But California courts have long disfavored disposing of class allegations at the pleading stage.  [Citation.]"  (*Shaw v. Los Angeles Unified School District* (2023) 95 Cal.App.5th 740, 761 (*Shaw*).)

When the issue on demurrer involves interpretation of a statute, as in this case, " ' "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose

and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."  [Citation.]  "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166.)" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617 (*City of San Jose*).)

"In CPRA cases, this standard approach to statutory interpretation is augmented by a constitutional imperative.  (See *Sierra Club v. Superior Court*, *supra*, 57 Cal.4th at p. 166.)  . . . 'A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be *broadly* construed if it furthers the people's right of access, and *narrowly* construed if it limits the right of access.'  (Cal. Const., art. I, § 3, subd. (b)(2), italics added, fn. omitted.)" (*City of San Jose*, *supra*, 2 Cal.5th at p. 617.)

"If the demurrer was sustained without leave to amend, we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment." (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.)  The burden is on the plaintiff to prove that amendment could cure the defect. (*Ibid*.)

## C.    Class Action Claim

Plaintiff contends class relief is available under the CPRA, based on the public policy of making class relief widely available unless the Legislature expresses a contrary intent and law requiring the CPRA's provisions to be construed broadly in favor of making public records accessible.  The City contends that the statutory language and well-established case law preclude plaintiff from bringing a class action under the CPRA.  We agree with the City's analysis.

### 1. *Law Governing Access to Public Records*

The California Constitution has long recognized the right to access information concerning the conduct of the people's business.  (Cal. Const., art. I, § 3, subd. (a).)  The CPRA, enacted in 1968 and recodified effective January 1, 2023, echoes that constitutional right, stating that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."  (§ 7921.000.)  The CPRA grants access to public records held by state and local agencies.  (§ 7920.000 et seq.; *Iloh v. Regents of University of California* (2023) 87 Cal.App.5th 513, 522–523.)  "In general, [the CPRA] creates 'a presumptive right of access to any record created or maintained by a public agency that relates in any way to the business of the public agency.' " (*City of San Jose, supra*, 2 Cal.5th at p. 616, italics omitted.)

"To further the statutory right of access to records maintained by public agencies, the [C]PRA requires prompt disclosure of records by any public agency unless 'the record in

9

question is exempt under express provisions of this division, or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.' [Citations.] The agency must make this determination within 10 days from receipt of the request and must provide prompt notification of its determination and any reasons therefor. [Citation.]" (*Gascón, supra*, 94 Cal.App.5th at p. 366.) The statute outlines specific exemptions (§§ 7930.100–7930.215), but a public entity claiming an exemption must show that the requested information falls within the exemption (§ 7922.000). (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 67.)

The principles and procedures for enforcing the CPRA's requirement to make public records available for inspection are outlined in sections 7923.000 through 7923.500. (See *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1262–1263.) Section 7923.000 provides that "Any person may institute a proceeding for injunctive or declarative relief, or for a writ of mandate, in any court of competent jurisdiction, to enforce that person's right under this division to inspect or receive a copy of any public record or class of public records." If a plaintiff or petitioner demonstrates to the court "that certain public records are being improperly withheld from a member of the public, the court shall order the officer or other person charged with withholding the records to disclose those records or show cause why that person should not do so." (§ 7923.100.) The CPRA's judicial enforcement provisions "reflect a clear legislative intent that the determination of the obligation to disclose records requested from a public agency be made

10

expeditiously." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 427 (*Filarsky*).)

"The judicial remedy set forth in the CPRA is available *only* to a person or entity who is seeking disclosure of public records and *only* where the public entity is allegedly improperly withholding those records. [Citations.] The CPRA provides *no* judicial remedy for any other person or entity or a remedy that may be utilized for any purpose other than to determine whether a particular record or class of records must be disclosed." (*County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119, 127 (*Santa Clara*).)

## 2. *Relevant Case Law*

The California Supreme Court in *Filarsky* interpreted the CPRA's language to preclude a public agency from filing a declaratory relief action to adjudicate its obligation to disclose records subject to a CPRA request. (*Filarsky*, *supra*, 28 Cal.4th at p. 426.)[2] The court explained that the plain statutory language "contemplates a declaratory relief proceeding commenced *only* by an individual or entity seeking disclosure of public records, and not by the public agency from which disclosure is sought." (*Ibid.*, italics added.) The *Filarsky* court

_____

[2] The *Filarsky* opinion considered former section 6258, which was recodified with substantially similar language at section 7923.000. The former statutory language stated: " 'Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under [the CPRA].' " (*Filarsky*, *supra*, 28 Cal.4th at p. 426, quoting former § 6258.)

11

went on to explain that the CPRA "includes protections and incentives for members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure." (*Id.* at p. 427.) "An award of costs and attorney fees pursuant to this provision is mandatory if the plaintiff prevails. [Citation.] On the other hand, if the defendant public agency prevails, the court lacks legal authority to award costs to the agency—even though the agency would be entitled to costs in an ordinary action—unless the action is frivolous." (*Ibid.*)

In *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1415 (*San Lorenzo*), the reviewing court relied on *Filarsky* to hold that the same statutory language "provides neither explicit nor implicit authority for one person to enforce another's inspection rights." In *San Lorenzo,* an advocacy group sought to overturn a school district's decision to close two schools. The trial court conducted a bench trial and ruled against the advocacy group on all causes of action, including one brought under the CPRA. (*Id.* at pp. 1368, 1371.) Prior to the lawsuit, the group's attorney made various written requests for public records, but an area resident (Churchill) also made separate requests, specifically for documents pertaining to the school district's use of bond money. (*Id.* at p. 1369.) The trial court excluded proffered testimony by Churchill concerning his records requests, because he made the requests as an individual and there was no indication he had made the request on behalf of the advocacy group. (*Id.* at pp. 1413–1414.) The appellate court agreed with the trial court's reasoning that any purported failure by the district to provide the requested documents to Churchill was actionable by him, but not by the advocacy group. (*Id.* at

12

p. 1415.) The court acknowledged that " 'any person' may enforce the CPRA. [Citation.]" (*Ibid*.) But the same enforcement provision specified that the right being enforced belonged solely to the person who made the request. "That provision 'contemplates a declaratory relief proceeding commenced only by an individual or entity seeking disclosure of public records . . . .' (*Filarsky* [], *supra*, 28 Cal.4th at p. 426, discussing [former] § 6258.)" (*San Lorenzo, supra*, 139 Cal.App.4th at p. 1415.) The appellate court also agreed that the advocacy group had not presented substantial evidence of the school district's failure to produce documents under the CPRA, because Churchill's request (which made no mention of the advocacy group) was not evidence that the advocacy group had made a CPRA request for the same category of documents. Absent evidence of the group making the request "there can be no statutory violation with respect to this information." (*Id*. at pp. 1411–1412.)

### 3. *Plaintiff's Class Claim Under the CPRA*

Turning to the case before us, plaintiff contends the trial court erred when it construed the language of section 7923.000 to preclude class relief.[3] Plaintiff argues that *Filarsky* and *San Lorenzo* are inapposite because neither case considered the question of whether class relief is available under the CPRA. We find the reasoning of *San Lorenzo* persuasive in the context of a

---

[3] Recall that section 7923.000 states "Any person may institute a proceeding for injunctive or declarative relief, or for a writ of mandate, in any court of competent jurisdiction, to enforce that person's right under this division to inspect or receive a copy of any public record or class of public records."

13

person seeking relief on behalf of a class. We also reject each of plaintiff's remaining arguments, instead concluding that the trial court correctly interpreted the statutory language of section 7923.000 as precluding plaintiff from pursuing class relief for a CPRA violation. We therefore conclude the trial court properly sustained the demurrer as to plaintiff's class claim under the CPRA without leave to amend.

### a. Public Policy Favoring Class Actions

Plaintiff contends the trial court's narrow reading of the statutory language ignores the policy preference for class actions. We acknowledge that under California law, courts are encouraged to liberally permit parties who meet the requirements for class certification to pursue class actions. (See, e.g., *Franchise Tax Bd. Limited Liability Corp. Tax Refund Cases* (2018) 25 Cal.App.5th 369, 387 [recognizing public policy encouraging use of the class action device].) However, when the statute plaintiff seeks to enforce (here the CPRA) precludes a party from bringing a claim on behalf of another person (see, e.g., *San Lorenzo, supra*, 139 Cal.App.4th at p. 1415), the policy preference alone is insufficient to permit a construction contrary to the plain statutory language and existing case law.

### b. Constitutional Language Favoring Broad Construction

Plaintiff also contends the trial court's interpretation of the CPRA runs counter to canons of statutory construction and violates the requirement of article I, section 3, of the California

14

Constitution that a statute be "broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2); *City of San Jose, supra*, 2 Cal.5th at p. 617.) We disagree that this constitutional directive requires us to depart from the reasoning in *San Lorenzo* and other cases that emphasize the purpose of the judicial enforcement provisions of the CPRA is limited to ensuring expeditious resolution of any dispute over a requesting party's right to access.

As the court in *Santa Clara* explained, "The CPRA provides *no* judicial remedy for any other person or entity or a remedy that may be utilized for any purpose other than to determine whether a particular record or class of records must be disclosed." (*Santa Clara, supra*, 171 Cal.App.4th at p. 127.) Similarly, a lawsuit brought to enforce an agency's obligations under the CPRA is a special proceeding limited to determining whether an agency is obligated to disclose the specific records in question. (*County of San Benito v. Superior Court* (2023) 96 Cal.App.5th 243, 265.) Construing the statutory language to permit class actions does not further the people's right of access recognized in the California Constitution, article I, section 3, absent some indication a public agency is consistently and erroneously claiming that some category of records is exempt from disclosure. That is not the premise of plaintiff's purported class action.

In addition, although the California Supreme Court has granted review, the appellate court in *City of Gilroy v. Superior Court* rejected a plaintiff's argument that it was entitled to declaratory relief that the city's past practice of withholding body-worn camera video footage violated the CPRA, where the city had already produced the footage requested by plaintiff.

15

(*City of Gilroy v. Superior Court* (2023) 96 Cal.App.5th 818, 823–824 (*City of Gilroy*), review granted, Feb. 21, 2024, 318 Cal.Rptr.3d 150.)  The appellate court reasoned that the "CPRA does not provide for declaratory relief other than to determine a public agency's obligation to disclose records."  (*City of Gilroy, supra*, 96 Cal.App.5th at pp. 833–834.)  In the case before us, because plaintiff is not seeking a resolution of the DWP's obligation to disclose public records, but rather a determination of whether the City's practice—of not providing a means to submit CPRA requests through separate department websites—violates the CPRA, such declaratory relief is not available.

Each of the cases discussed above demonstrates the limited nature of relief available under the CPRA, reinforcing the trial court's correct determination that a class action to enforce the CPRA is not permissible on the facts alleged in plaintiff's complaint.  As we discuss further below, permitting plaintiff to pursue a class action under the circumstances alleged here would not necessarily enhance public access, particularly where there is no indication that large numbers of ascertainable people are being denied access to public records held by the DWP.

c.      Class Actions Under Federal Law and Washington's Public Records Law

We also reject plaintiff's argument that decisions applying federal and out-of-state law to permit class actions under the Freedom of Information Act (FOIA; 5 U.S.C. § 552 et seq.) or a similar state statute weigh in favor of construing the CPRA to permit class relief.  We agree with the City that the cases plaintiff relies on are distinguishable and do not offer a

persuasive rationale for why class relief is sanctioned by the language of the CPRA.

None of the federal cases cited by plaintiff provide us any assistance with determining whether class relief is permitted under the CPRA. None of them consider the statutory language of FOIA that relief is limited to records "improperly withheld from the complainant." (5 U.S.C. § 552(a)(4)(B).) (See *Nightingale v. U.S. Citizenship & Immigr. Servs.* (N.D. Cal. 2019) 333 F.R.D. 449, 453 [granting motion for class certification on a claim that sought injunctive relief based on allegation that immigration authorities had a "pattern or practice" of delayed responses to FOIA requests, resulting in tangible harm to plaintiffs seeking immigration determinations]; *Davis v. Astrue* (N.D. Cal. 2008) 250 F.R.D. 476, 483 [permitting amendment to class FOIA claim, relying on Ninth Circuit case involving attorney fee award in class action under FOIA; *Feinman v. F.B.I.* (D.D.C. 2010) 269 F.R.D. 44, 49 [relying on *Davis v. Astrue* and considering class certification motion, assuming *arguendo* that class relief was available].) While the district court in *Knox v. Westly* (E.D. Cal., Nov. 1, 2006, No. 2:05–CV–2198–MCE–KJM) 2006 WL 3147683, at *4, grants a motion for class certification, there is no indication in the opinion that plaintiffs were seeking any relief under FOIA.

Plaintiff also relies on a case interpreting Washington state law, *John Doe G v. Dep't of Corr.* (Wash. Ct. App. 2017) 197 Wn.App. 609 [391 P.3d 496] (*John Doe G*), reversed on other grounds by *Doe G v. Dep't of Corr.* (2018) 190 Wn.2d 185, 189 [410 P.3d 1156, 1159]. In *John Doe G*, the plaintiffs represented a class of "level I sex offenders" who obtained an injunction preventing the Department of Corrections from producing sex

17

offender evaluations in response to a public records act request. (*John Doe G, supra*, 391 P.3d at p. 498.) Unlike the CPRA, the Washington Public Records Act (WPRA) permits a third party to seek an injunction to prevent disclosure of a public record.[4] The appellant, who had requested the records, argued that the WPRA prohibited the trial court from certifying the class, because the statutory language only authorized an injunction "upon motion and affidavit by an agency or its representative or a person who is named in the record or to whom the record specifically pertains . . . ." (Wash. Rev. Code Ann. § 42.56.540; see *John Doe G, supra*, 391 P.3d at p. 506.) The reviewing court rejected appellant's argument, noting it relied solely on a statutory language argument and did not contend that the procedural requirements for class certification were unmet. Construing "the class action rule 'liberally in favor of permitting certification'," the court reasoned "[w]hen a court certifies a class, the representative plaintiffs stand in for all other members of the class . . . . A decision in the case then binds all unexcluded members of the class. Because the plaintiffs represent an entire class, even statutes the legislature phrases in individual terms

---

[4] The statutory language at issue stated: "The examination of any specific public record may be enjoined if, upon motion and affidavit by an agency or its representative or a person who is named in the record or to whom the record specifically pertains, the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." (Wash. Rev. Code Ann. § 42.56.540; see *John Doe G, supra*, 391 P.3d at p. 506.)

18

allow for class actions." (*John Doe G, supra*, at p. 506, fns. omitted.) While the case may hold some persuasive value for the proposition that statutes phrased in individual terms may still support a class action, we find the facts and underlying law to be distinguishable from the case at hand. The plaintiffs were representing a discrete and easily ascertainable group of individuals, who were named in the records in question and who sought to prevent disclosure of an identifiable group of public records. (*Id*. at p. 500.) The reviewing court reasoned that once a class was certified, the plaintiffs represented all unexcluded members of the class, making the decision binding as to the entire class. (*Id*. at p. 506.) In the case currently before us, it is unclear how a decision would apply to or bind the members of the class plaintiff purports to represent. We explore that challenge in the next section.

### d. Class Certification Requirements

Finally, even if we are incorrect in concluding that class claims are not permissible under the CPRA, the complaint allegations are insufficient to meet the requirements for class certification. A trial court may determine whether a case is suitable for class treatment at the demurrer stage " 'only if it concludes as a matter of law that, assuming the truth of the factual allegations in the complaint, there is no reasonable possibility that the requirements for class certification will be satisfied.' [Citations.]" (*Maarten, supra*, 95 Cal.App.5th at p. 608.) Two cases out of this district have recently considered purported class actions and found certain allegations to be adequate to survive demurrer. (*Maarten, supra*, 95 Cal.App.5th

19

at pp. 610, 619–629; *Shaw, supra*, 95 Cal.App.5th at pp. 762–767.) In *Maarten*, the order sustaining defendants' demurrer was reversed, finding sufficient allegations of common questions of law and fact on whether landlord violated a statutory prohibition against offering units for rent after taking a building out of the rental market. (*Maarten, supra*, 95 Cal.App.5th at pp. 619–623.) In *Shaw*, the appellate court found allegations of "community of interest" adequate to allow plaintiffs pursuing relief for harms caused by COVID remote learning policies to move forward, even though the policies had ended. (*Shaw, supra*, 95 Cal.App.5th at pp. 764–767.)

"A class action may be maintained if there is an ascertainable and sufficiently numerous class, a well-defined community of interest among the class members, and substantial benefits from certification render proceeding as a class superior to other alternatives." (*Maarten, supra*, 95 Cal.App.5th at p. 609, citing *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021, (*Brinker*); Code Civ. Proc., § 382.) "As part of the community of interest requirement, the party seeking certification must show that issues of law or fact common to the class predominate." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28 (*Duran*).) "To determine whether common issues predominate, the court must ask whether ' "the issues framed by the pleadings and the law applicable to the causes of action alleged" ' are 'susceptible of common proof' for all members of the proposed class (*Brinker, supra*, 53 Cal.4th at p. 1024), or whether the class members will be ' "required to litigate numerous and substantial questions determining [their] individual right to recover . . . ." ' (*Duran, supra*, 59 Cal.4th at p. 28.) The predominance inquiry focuses on the facts and the elements

20

necessary to establish the defendant's liability. (*Ibid.*; *Brinker*, at p. 1024.)" (*Maarten*, *supra*, 95 Cal.App.5th at pp. 609–610.)

Even assuming the truth of plaintiff's factual allegations, she has not alleged sufficient facts to show a reasonable possibility that she would be able to show an ascertainable class, or that class certification would result in substantial benefit. The complaint purports to assert claims on behalf of two subclasses: one consisting of all persons who requested records and the City did not meet the relevant CPRA deadline, and the other consisting of City residents who were "prohibited or deterred" from making a CPRA request because specific City departments did not have a method to submit such requests. Other than a speculative allegation that the City's existing structure for submitting CPRA requests was "illusory at best for DWP requestors", plaintiff makes no allegation concerning the existence or experience of any other members of her alleged subclasses, including what public records they might be seeking. Based on these allegations, it is impossible to determine who might be included in her alleged subclass, and there is no support for her argument that proceeding with class litigation would result in substantial benefit. For any particular individual who might fall within one of plaintiff's alleged subclasses, a trial court would still need to consider the specifics of each request and response, and examine the requested record itself to determine whether the record is exempt under the statute. (§ 7922.000 ["An agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this division, or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record"]; § 7923.105

21

[court shall decide the case after examining the record in camera, if permitted].)  Therefore, the benefits of proceeding as a class are unclear.

Plaintiff also relies on *In re Tobacco II Cases* (2009) 46 Cal.4th 298, to argue that class litigation is more "economically feasible" because it permits the aggregation of "individual claims that are too small to justify the expense of litigation . . . ." (*Id.* at p. 313.)  However, this argument is belied by the fact that an individual who successfully enforces a CPRA claim is entitled to court costs and attorney fees, and only risks liability for those costs if the court determines the suit is frivolous.  (§ 7923.115.)

## 4. *Plaintiff's Class Claim Under the Constitution*

We are also not persuaded by plaintiff's contention that the trial court erred in denying her the opportunity to seek declaratory relief on behalf of a class under the California Constitution.  Plaintiff argues that both the City's demurrer and the trial court's ruling only addressed the viability of her claim under the CPRA, and that because she alleged her single cause of action under the California Constitution in addition to the CPRA, she can continue her claim solely under article I, section 3 of the California Constitution.  She argues the trial court should have at least granted her leave to amend to state a separate constitutional claim.  We reject the argument that class relief is available based on the constitutional language alone, and in any event such a claim would suffer from the same infirmities discussed above as to class certification requirements necessary for the statutory claim.

22

## D.    Plaintiff's Individual CPRA Claim

Plaintiff contends the allegations of her complaint are sufficient to support an individual claim for relief under the CPRA.  We agree, and therefore reverse the trial court's order as to the individual claim.

The CPRA requires the City to respond in writing to any written request for a copy of public records within 10 days of receiving the request, with certain exceptions.  (§§ 7922.535, 7922.540.)  If the public entity claims the record is exempt from disclosure, it must justify its claim as part of the response.  (§§ 7922.000, 7922.540.)  In other words, upon receiving a request for public records, any agency subject to the CPRA must make the records available or respond to the request within the time frames described in the statute.  (*Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1419 (*CYAC*) [reviewing statutory requirements governing entity's duty to respond].)

In this case, plaintiff alleged that she submitted a request for public records to the DWP, a department of the City, which triggered the City's duty to respond, and the City neither responded in a timely manner nor produced the requested records.  These allegations are sufficient to state an individual claim for relief under the CPRA.

The City contends the trial court correctly sustained the demurrer to plaintiff's individual claim because the court could have taken judicial notice of the fact that the City's records did not reflect submission of any request as alleged.  Specifically, the letter attached to the demurrer from the City's Attorney's office to plaintiff's counsel asserted the City had no record of receiving

any communications from the plaintiff on January 9 and 15 and March 3, 2023. The letter included the full text of plaintiff's March 9, 2023 message, but noted it did not request past electric bills or any other records from the City. In addition, the City filed a DWP employee's declaration in support of its motion for sanctions that contained substantially similar information.[5] In the declaration, the employee describes the methodology and results of the search for electronic messages through the DWP's "Contact Us" page, noting that the search revealed that plaintiff had sent four messages through the "Contact Us" page in 2021, and one on March 9, 2023. The declaration quotes plaintiff's March 9, 2023 email in its entirety.

A demurrer may be supported by matters that are subject to judicial notice. (Code Civ. Proc., § 430.30, subd. (a); *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) However, "a court ruling on a demurrer cannot decide a question that may depend on disputed facts by means of judicial notice." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 115.) The factual allegations of a complaint can withstand a demurrer if they are adequate to state a cause of action under any legal theory. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38–39.)

The complaint alleges that plaintiff requested her past electric bills and the City did not send her the requested records

---

[5] The trial court denied the motion for sanctions, and the City has not appealed that decision. Notably, the court reasoned that "Defendant separately challenges the factual correctness of Plaintiff's verified pleading, claiming the true facts are otherwise, but to resolve this dispute, the Court would have to hold an evidentiary hearing or perhaps empanel an advisory jury."

or any response within the time required under the CPRA. Even if we were to take judicial notice of a declaration that the City conducted a search and found no such request, all the City has done is raise a factual dispute, and we decline to entertain such a dispute on appeal of an order sustaining a demurrer. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) Because plaintiff has alleged sufficient facts to state a cause of action under the CPRA, the trial court incorrectly sustained the demurrer to plaintiff's individual claim.

## DISPOSITION

The judgment and the November 20, 2023 order sustaining the City of Burbank's demurrer are reversed. The trial court is directed to enter a new and different order sustaining the City's demurrer to the class action claim and overruling the demurrer to Desolina Di Lauro's individual claim. Each party shall bear its own costs on appeal.

MOOR, J.

WE CONCUR:

HOFFSTADT, P. J.

KIM (D.), J.

25

Filed 4/23/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DESOLINA DI LAURO, | B334408 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCV15014) |
| v. | |
| CITY OF BURBANK, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Respondent. | **[NO CHANGE IN JUDGMENT]** |

THE COURT:

The court's opinion in this matter was filed on March 28, 2025, and, at that time, was not certified for publication. For good cause, the court has determined that the opinion should be certified for publication.

Accordingly, it is hereby ordered that the opinion, filed on March 28, 2025, is certified for publication.

No change in Judgment.

_____

HOFFSTADT, P. J.          MOOR, J.          KIM (D.), J.